Louise **DRUDGE**, Appellant–Plaintiff,

v.

Jean **BRANDT**, Appellee–Defendant.

No. 25A03–9801–CV–35.

Court of Appeals of Indiana.

Sept. 8, 1998.

Jere L. Humphrey, Kizer & Neu, Plymouth, for Appellant–Plaintiff.

Alan D. Burke, Burke & Lee, Rochester, for Appellee–Defendant.

## OPINION

FRIEDLANDER, Judge.

This appeal involves a dispute between Louise Drudge and her daughter, Jean Brandt, over an annuity purchased by Drudge that was placed in Brandt's name. At trial, this case also involved a dispute between the two parties over money Drudge advanced to Brandt for the purchase of a home. Drudge appeals from a $57,799.05 judgment entered in favor of Drudge following a bench trial in the Fulton Circuit Court.

The following restated issues are presented in this appeal:

1. Did the trial court err in failing to order that the agreement pertaining to the annuity be rescinded and the annuity transferred to Drudge?

2. Did the trial court err in not finding that Brandt had committed constructive fraud and in not ordering that the annuity be placed in a constructive trust?

We affirm.

The facts most favorable to the judgment are as follows. In January 1997, the then-ninety-two-year-old Drudge filed a three-count complaint against Brandt, alleging in Count I that Brandt "took advantage of the mother/daughter relationship and prevailed upon [Drudge] to advance to [Brandt] the sum of ... $51,216.95 ... in order that [Brandt] could purchase a house in Rochester, Indiana." *Record* at 162. Drudge further alleged that such funds were advanced to Brandt "with the specific understanding that the monies so advanced would be repaid by [Brandt] when [Brandt's] house in Punta Gorda, Florida, sold." *Id.* Drudge also alleged that Brandt had not repaid the money advanced to her even though she had sold her house in Florida in 1995. Drudge claimed that Brandt's actions constituted a breach of contract as well as constructive fraud. She sought to recover punitive damages and to have a constructive trust placed upon Brandt's house in Indiana, which was purchased using the money advanced by Drudge.

In Count II of the complaint, Drudge alleged that, in an attempt at estate planning, she agreed in September 1996 to transfer money into an annuity with Jackson National Life Insurance Company which was to be placed in Brandt's name, and Brandt agreed to pay the interest income on the annuity to Drudge. According to Drudge, Brandt breached the agreement by failing to pay Drudge the interest income. Drudge sought money damages equal to the amount of the interest income paid or to be paid to Brandt, a rescission of the agreement, and to have ownership of the annuity transferred to her own name.

In Count III, Drudge again alleged constructive fraud and sought to have the annuity placed in a constructive trust and to recover punitive damages.

In her answer, Brandt denied that she took advantage of Drudge in any way. She admitted that Drudge had given her money for the purchase of a home in Indiana and that she had originally agreed to repay Drudge when she sold her home in Florida, but claimed that the agreement was later modified by the parties. In addition, Brandt admitted that Drudge transferred the Jackson National Life annuity to her, but denied that there was any agreement to pay the interest income from the annuity to Drudge.

As an affirmative defense, Brandt alleged that Drudge had been incapable of handling her own financial affairs for several years and had executed a power of attorney authorizing Carol Sue Barts, another of Drudge's daughters, to handle all of her financial and business affairs. Brandt claimed that, after she had agreed to repay the money advanced to her for the home purchase, Barts, acting as attorney in fact for Drudge, decided to "gift a substantial sum of money by [Drudge] to Carol Sue Barts", Record at 154, in order for Barts to purchase a house which was to be titled in Barts's name and used for her own benefit. At such time, according to Brandt, she and Barts agreed that Brandt need not repay the money advanced to her for the purchase of the home in Indiana and that the advancement of such monies to Brandt and to Barts would be considered gifts in contemplation of Drudge's death. Brandt further alleged that, at the same time Brandt's annuity was purchased with Drudge's money, Barts used Drudge's money to purchase another annuity which was placed in Barts's name. Brandt also alleged that Drudge's money was invested in these annuities with the understanding that the annuities would be gifts in anticipation of Drudge's death, and that Drudge did not reserve a right to receive interest payments from either annuity.

At trial, Greg Brown, an insurance agent, testified that he had numerous discussions with Drudge, Brandt, and Barts about investing some of Drudge's money in annuities that would be set up in Brandt's and Barts's names. According to Brown, Drudge wanted half of the money put into Brandt's name and the other half put in Barts's name. Brown described the agreement made among Drudge, Brandt, and Barts in the following colloquy:

Q [W]ere there any conditions on the transfer of these gifts by Louise [Drudge] to the two daughters?

A Um, the agreement was, between all of us, that Louise wanted to put half the money in Sue's name, half the money in Jeanie's name, any interest we would earn off the annuities, at the end—we couldn't take any money out for twelve months—at the end of twelve months then I had Jean sign a form and I had Sue sign a form, the checks would come to me. When I received the checks I would take Sue's check to her, Jeanie's check to her, have them endorse it and then give the checks to Louise, so that Louise could use it for interest income to live on.

Q And was that one of the conditions which she transferred this was so that she would get the interest back to live on?

A That's the only reason we transferred the money, so that with that agreement that that interest would go back to Louise to live on, until Louise was gone, and then that money would be the girls' at that time—after Louise was gone.

\* \* \* \* \* \*

A [O]riginally, the day we did this, we put $102,761.00 into each annuity, but then after we had put it in there they realized that we needed money for mom to live on for the twelve months while the interest was earning on this amount, so we took $15,000.00 back out of Jean's. We took $15,000.00 back out of Sue's and we gave that money back to Louise to put in her checking account to have money to live on until the interest would come due twelve months from now.

Record at 192–93. When Brown received the first annual interest check from Barts's annuity but no check from Brandt's annuity, he made a telephone call to Jackson National Life and then called Brandt. Brandt informed Brown that, because Brown was very

busy, she thought that it would be better for Brown if the annuity check were sent directly to her. Brown testified that he then asked Brandt if he could stop by her house and pick up the endorsed check to give to Drudge. According to Brown, Brandt informed him that she had other plans for the money and was not going to give it to him to turn over to Drudge. Brandt told Brown that she was going to give each of Drudge's six grandchildren $1,000.00 because "[s]he believed that's what her father would want her to do with the money." *Record* at 203.

Brown further testified that, although the beneficiary of Brandt's annuity may have been changed, at the time the annuity was purchased, Brandt's son Robert Michael Brandt, not Drudge, was listed as beneficiary. The annuity policy admitted into evidence at trial listed Brandt's son as the beneficiary.

Drudge's testimony with regard to the annuities was consistent with that given by Brown. She testified that she was to receive the interest that accrued on both annuities for as long as she lived, but upon her own death, one annuity would belong to Brandt and the other would belong to Barts.

Brandt testified at trial that she knew nothing about Drudge's plan to purchase the annuities from Jackson National Life and never discussed such a possibility with anyone until Brown came to the door of her home, introduced himself, told her that he was working for Drudge, explained the purchase of the annuities, and asked her to sign some paperwork.

Brandt's trial testimony with regard to interest to be paid on the annuity was consistent with that given by Brown and Drudge. The following colloquy occurred during Brandt's direct examination:

Q [F]rom talking with Mr. Brown, what did you understand the arrangement [with regard to the annuity] was going to be?

A Just like he said—he's right. The interest goes to mom.

*Record* at 227.

Brandt admitted that she used the first annual interest check from the annuity to give each of Drudge's six grandchildren $1,000.00, but she claimed that she planned to give the rest of the annual checks for interest income from the annuity to Drudge.

The trial court's judgment stated in pertinent part:

[T]he court being duly advised, hereby determines as follows:

1. The Court now finds for the plaintiff Louise Drudge and against Jean Brandt.

2. The Court enters judgment in favor of Louise Drudge and against Jean Brandt in the total amount of $57,799.05 together with interest thereon at the legal rate from this date until paid and the costs of the action.

3. In addition, the Court enters its Declaratory Judgment as to sums payable upon a certain annuity purchased with funds of Louise Drudge and placed in the name of Jean A. Brandt which pays annual interest, that all such interest payments are hereby declared to be paid for the benefit of Louise Drudge and may be payable directly to her in fulfillment of Jackson National Life Insurance Company's responsibility to pay interest upon that annuity.

*Record* at 7.

The trial court stated its findings in a memorandum which immediately followed the judgment and explained how it arrived at the judgment amount. The memorandum stated in pertinent part:

Unquestionably the agreements of the parties were that Jean Brandt provide that the interest payments upon the annuities to be provided to Louise Drudge; this payment is part of the consideration to Louise Drudge for her buying the annuity for Jean. Failure to return the first such payment of $6582.10 makes judgment for that sum necessary.

It is also clear to the Court that Jean Brandt is obligated to return the $51,216.95 forwarded to her for use in purchase and upgrade of her Jackson Boulevard property [in Indiana].

*Record* at 8.

1.

Drudge claims that the trial court erred in failing to order that the agreement pertain-

ing to the annuity be rescinded and the annuity transferred to Drudge.

■ Drudge appeals a negative judgment. To prevail on an appeal of a negative judgment, the appellant must establish that the judgment is contrary to law. *Board of Comm'rs of Delaware County v. Lions Delaware County Fair, Inc.*, 580 N.E.2d 280 (Ind. Ct.App.1991), *trans. denied.* A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to but one conclusion, but the trial court reached a different conclusion. *Gagne v. Trustees of Ind. Univ.*, 692 N.E.2d 489 (Ind.Ct.App.1998). In addressing whether a negative judgment is contrary to law, we consider only the evidence most favorable to the prevailing party and do not reweigh the evidence or judge the credibility of witnesses. *Board of Comm'rs of Delaware County v. Lions Delaware County Fair, Inc.*, 580 N.E.2d 280.

■ Although there are certainly elements of an inter vivos gift in this case, the trial court treated the agreement made by the parties as a simple contract and essentially ordered the parties to perform the contract according to its terms. The trial court declared that all interest payments on the annuity were for Drudge's benefit and could be paid directly to her, but did not allow Drudge to rescind the agreement and recover the principal amount of the annuity.

In arguing that the trial court erred in not ordering a rescission of the agreement, Drudge relies upon *Dowell v. Jolly,* 130 Ind. App. 280, 159 N.E.2d 590 (1959), *Tibbetts v. Krall,* 128 Ind.App. 215, 145 N.E.2d 577 (1957), and *Cree v. Sherfy,* 138 Ind. 354, 37 N.E. 787 (1894), cases involving aged or infirm persons who transferred land to others in exchange for an agreement to provide care and maintenance during the transferor's lifetime. In *Tibbetts,* the court stated:

[I]t is well settled that a grant of land in consideration of an agreement for the future support of the grantor, in the absence of a stipulation to the contrary, creates in the grantee an estate on the condition subsequent. Such contracts, in which aged and infirm persons convey their property to others in consideration of an agreement for support, maintenance, and care, are almost universally recognized by the courts as constituting a class by themselves in matters pertaining to their construction and interpretation, and, as has been reiterated in several decisions, until such contract is fully performed on both sides it is liable to be rescinded and the property reclaimed, leaving the parties to their remedies respectively for what may have been furnished under the contract.

*Tibbetts,* 145 N.E.2d at 581 (citations omitted). *See also Dowell,* 130 Ind.App. 280, 159 N.E.2d 590 (contracts in which there is a promise to care for and maintain aged and infirm persons as a consideration for a grant of land are in a class by themselves, and such contracts may be rescinded until fully performed on both sides), and *Cree,* 138 Ind. 354, 37 N.E. 787 (the court rescinded a conveyance of land by an aged and infirm father to his son where such conveyance was given in exchange for a promise to provide personal care, support, and maintenance for the duration of the father's life and such services were not provided after the son's death).

These cases do not compel the rescission of the agreement in this case. First, the property transferred in this case was not land. Rather, it was money used to purchase an annuity in Brandt's name. Second, the transfers of land in the earlier cases were in exchange for agreements to provide personal services to the transferor, and not merely the repayment of accrued interest on an annuity. Because of the unique character of both land and the provision of personal care and maintenance to an aged and infirm person as consideration for the transfer of such property, rescission was the only practical remedy to be afforded in the event of a breach. *See Cree,* 138 Ind. 354, 37 N.E. 787. Here, neither the property conveyed, *i.e.,* money with which to purchase an annuity, nor the property promised in exchange, *i.e.,* the accrued interest on the annuity during Drudge's lifetime, were unique. Under the circumstances presented in this case, we cannot say that the judgment entered by the trial court is con-

trary to law or that the trial court erred in failing to grant a rescission of the contract.[1]

### 2.

Drudge claims that the trial court erred in not finding that Brandt had committed constructive fraud and in not ordering that the annuity be placed in a constructive trust.

In *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 837 (Ind.Ct.App.1995) (citations and footnote omitted), this court noted the prerequisites to the imposition of a constructive trust, stating:

A constructive trust is a fiction of equity, devised for the purpose of making equitable remedies available against one who through fraud or other wrongful means acquires property of another. Thus, fraud, either actual or constructive, is a prerequisite to the imposition of a constructive trust. We will find a constructive trust only where there has been a breach of a confidential or fiduciary relationship. A confidential or fiduciary relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other.

■ To maintain an action for actual fraud, there must be a material misrepresentation of past or existing fact which is made with knowledge of or reckless disregard for the falsity of the statement, and resulting reliance upon the misrepresentation to the detriment of the relying party. *Huff,* 654 N.E.2d 830. Constructive fraud, on the other hand, arises by operation of law from a course of conduct, which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud. *Stoll v. Grimm,* 681 N.E.2d 749 (Ind. Ct.App.1997); *Huff,* 654 N.E.2d 830.

Constructive fraud encompasses several related theories, all of which are based on the premise that there are situations which might not amount to actual fraud, but which are "so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent." *Scott v. Bo-*

*dor, Inc.,* 571 N.E.2d 313, 324 (Ind.Ct.App. 1991).

*Stoll,* 681 N.E.2d at 757.

■ Based on the foregoing, we cannot say that the trial court erred in not finding that Brandt had committed constructive fraud and in failing to order that the annuity be placed in a constructive trust. We are not convinced that Brandt's decision to distribute the first annual interest payment to Drudge's grandchildren instead of giving the check to Drudge amounted to "a course of conduct, which, if sanctioned by law, would secure an unconscionable advantage[.]" *Stoll,* 681 N.E.2d 749. While there is no question that all parties agreed that the interest checks would be turned over to Drudge during her lifetime, Brandt's failure to turn over the first annual interest check was no more than a simple breach of contract, which the trial court remedied by ordering Brandt to repay that amount to Drudge.

■ We are also unpersuaded by Drudge's claims that a constructive trust must be imposed on the annuity because, without one, Brandt could cash it in or, in the event Brandt should die before Drudge, Brandt's son, who is listed as the beneficiary on the policy, would receive the proceeds. Both of these scenarios were foreseeable at the time the annuities were purchased and could have been taken care of at that time. As noted above, the constructive trust is an equitable remedy which is imposed where there has been either actual or constructive fraud and a breach of a confidential or fiduciary relationship. It is not a vehicle for rewriting a contract improvidently entered which may no longer reflect the wishes of at least one of the parties.

Judgment affirmed.

STATON and GARRARD, JJ., concur.

---

1. We are unpersuaded by Drudge's argument that "the law of gifts as it relates to undue influence and special relationships of trust also support[s] setting aside the gift." Appellant's Brief at 11.