Dr. William D. CUTSHALL, and Nancy Cutshall, Appellants–Plaintiffs,

v.

Ted A. BARKER, Dean F. Cutshall, Jr., Arthur W. Garringer, Edward T. Rice, Amy Barker, Stacey Barker, and Wayne Distributing, Inc., Appellees–Defendants.

No. 49A04–9908–CV–388.

Court of Appeals of Indiana.

Aug. 21, 2000.

William C. Barnard, Mary T. Doherty, Sommer & Barnard, Indianapolis, Indiana, Attorneys for Appellants.

Thomas A. Brodnik, Richard B. Kaufman, Stark Doninger & Smith, Robert K. Stanley, Kevin M. Toner, Michael J. Valaik, Baker & Daniels, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Dr. William D. Cutshall ("William") and his wife, Nancy (collectively, "the Cutshalls") appeal from the trial court's order dismissing both their shareholder's derivative action against Wayne Distributing, Inc. ("Wayne"), Ted A. Barker ("Barker"), Dean F. Cutshall, Jr. ("Dean"), Arthur Garringer ("Garringer"), Edward T. Rice ("Rice"), Amy Barker ("Amy"), and Stacey Barker ("Stacey"), and their direct action against Barker, Dean, Garringer, Rice, Amy and Stacey (collectively, "the Individual Defendants"). We affirm in part, reverse in part, and remand.

### Issues

The Cutshalls raise two issues for our review, which we restate as follows:

I. Whether the trial court erred by dismissing the Cutshalls' shareholder's derivative action based on the determination of the Special Litigation Committee ("SLC").

II. Whether the trial court erred by dismissing the Cutshalls' direct action against the Individual Defendants.

### Facts and Procedural History

Wayne is a distributorship owned primarily by the Cutshall family, and incorporated under Indiana law. Ninety-five per-

cent of the shares of Wayne are owned by members of the Cutshall family. At the time relevant to this lawsuit, Wayne's Board of Directors ("Board") consisted of Barker,[1] Dean, Garringer, Rice and William.[2] Barker was the Chairman of the Board, and also served as the President of Wayne.

On August 30, 1996, the Cutshalls filed a shareholder's derivative suit against Wayne, Barker, Dean, Garringer, Rice, Amy and Stacey.[3] The Cutshalls alleged that Barker and Dean, in concert with the other named defendants, harmed Wayne by: (1) engaging in private share transactions, thereby usurping a corporate opportunity; (2) approving an employment agreement that provided excessive compensation for Barker; (3) approving an equipment lease whereby Wayne provided a Jaguar for Barker; (4) approving a $150,000.00 bonus for Barker; and (5) approving a $700,000.00 loan for Dean. At the time the Cutshalls filed the derivative action, Wayne was represented by the law firm of Baker & Daniels. However, at the October 23, 1996 Board meeting, the Board hired the law firm of Stark Doninger & Smith to represent Wayne.[4] At that same Board meeting, Stark Doninger & Smith was appointed special legal counsel to advise the Board about its legal obligations with regard to indemnifying the defendant-directors. Stark Doninger & Smith was also appointed to advise the Board regarding the formation of an SLC.

The Board appointed an SLC, composed of William Linville ("Linville"), William Cummings ("Cummings"), and Don Robertson ("Robertson").[5] Wayne appointed Stark Doninger & Smith to represent the

---

1. Barker is married to William's and Dean's sister, Cynthia Cutshall Barker.

2. At the November 15, 1996 shareholder's meeting, William was not re-elected to the Board.

3. Amy and Stacey were joined as defendants to the action because they were the record owners of Wayne stock that was purchased by

Barker in one of the allegedly wrongful private share transactions.

4. Baker & Daniels continued to represent the individuals named as defendants in the suit.

5. Robertson resided in Florida, and as a result, participated as a member of the SLC by telephone.

SLC. The responsibility of the SLC was to investigate the complaint to determine if Wayne had a legal or equitable right or remedy and, if so, whether pursuit of the derivative action was in the best interests of Wayne. The parties agreed to a stay of the derivative action, pending the decision of the SLC.

The SLC held two organizational meetings prior to beginning their investigation. On November 7, 1996, Stark Doninger & Smith sent the SLC members several documents, including the Cutshalls' complaint and the Indiana statutes governing derivative actions. On November 20, 1996, the SLC members received records of Wayne that were referred to in the complaint, a list of questions to be posed during the SLC's interview of the Cutshalls, and a copy of Wayne's stock transfer records. On January 21, 1997, Stark Doninger & Smith sent SLC members copies of Wayne's articles of incorporation, a letter from the Cutshalls' counsel explaining the basis of the allegations in the Cutshalls' complaint, and additional documents referenced in that complaint. On February 13, 1997, the SLC received minutes from Wayne's November 15, 1996 shareholder's meeting, a list of issues to guide their deliberation meeting, and a letter from Baker & Daniels, counsel for the Individual Defendants, explaining their defenses to the Cutshalls' complaint. The letter from Baker & Daniels was supplemented with a letter dated February 21, 1997, further explaining the Individual Defendants' defenses to the Cutshalls' complaint.

In addition to reviewing the above-described documents, the SLC interviewed all named parties in this dispute, with the exception of Amy and Stacey. Those interviews took over twenty hours to complete and spanned a three-week period. The interviewees were not placed under oath prior to the questioning. The interviews were tape-recorded, but the SLC members received no transcripts of the interviews.

Following the SLC's document review and interviews of witnesses, the SLC met on February 21, 1997, to determine whether Wayne had a legal or equitable remedy, and if so, whether it was in Wayne's best interests to pursue such remedy. At this meeting, the SLC discussed each of the allegations in the Cutshalls' complaint. Following its discussion, the SLC determined that Wayne did not have a legal or equitable remedy against the Individual Defendants, that if a remedy did exist, it was not in the best interests of Wayne to pursue the remedy, and that the complaint should be dismissed. Stark Doninger & Smith was directed to prepare a report, which was adopted by the SLC on March 14, 1997. As a result of the SLC's determination, the Individual Defendants filed a motion to dismiss the Cutshalls' derivative action. Subsequently, the Cutshalls sought to discover materials relevant to the formation and investigation of the SLC, and the trial court granted the Cutshalls' motion to compel such discovery.

Before the trial court ruled on the Individual Defendants' motion to dismiss, the Cutshalls filed an amended complaint reasserting their derivative claim and adding a direct action against the Individual Defendants alleging breach of fiduciary duties. The Individual Defendants and Wayne subsequently filed motions to dismiss, seeking to dismiss both the direct and derivative actions on the basis of the SLC's determination. Following an oral argument, the trial court granted both Wayne's and the Individual Defendants' motions and dismissed both the derivative and the direct action. This appeal ensued.

### Discussion and Decision

#### I. Shareholder's Derivative Action

The Cutshalls contend that the trial court erred by dismissing their derivative shareholder's claim against Wayne and the Individual Defendants. Specifically, the Cutshalls allege that the SLC was not disinterested because Stark Doninger & Smith represented both the SLC and

Wayne, and that the SLC's investigation was not conducted in good faith.

### A. Standard of Review—Dismissal based on SLC Determination

■ Under Indiana Code section 23–1–32–4(c), if an SLC determines that pursuit of a shareholder's derivative proceeding is not in a corporation's best interests,

the merits of that determination shall be presumed to be conclusive against any shareholder ... bringing a derivative proceeding ... unless such shareholder can demonstrate that:

(1) the committee was not "disinterested" within the meaning of this section; or

(2) the committee's determination was not made after an investigation conducted in good faith.

Further, the Official Comments to Indiana Code section 23–1–32–4(c) provide:

If the committee was "disinterested" and conducted a "good faith" investigation, a shareholder may not litigate either the merits of the claim itself or the committee's determination that pursuit of the claim was not in the best interests of the corporation. Subsection (c) thus rejects cases such as *Zapata v. Maldonado,* 430 A.2d 779 (Del.1981), to the extent they hold that in certain circumstances a court may apply "its own independent business judgment" to evaluate the merits of a committee's determination. In essence, subsection (c) codifies the "business judgment rule" as applied to a decision by a properly constituted

committee, acting in good faith, about whether pursuit of a right or remedy is in the corporation's best interests. This result follows cases such as *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 ([N.Y.] 1979).[6]

Thus, in order to preclude the dismissal of their shareholder's derivative action, the Cutshalls had the burden of proving that the SLC was not disinterested or did not conduct its investigation in good faith. The trial court determined that the Cutshalls did not meet their burden and dismissed their complaint. Accordingly, the Cutshalls are appealing from a negative judgment.

■ To prevail on an appeal from a negative judgment, the appellant must establish that the judgment is contrary to law. *Drudge v. Brandt,* 698 N.E.2d 1245, 1249 (Ind.Ct.App.1998). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to but one conclusion, but the trial court reached a different conclusion. *Id.* In addressing whether a negative judgment is contrary to law, we consider only the evidence most favorable to the prevailing party and do not reweigh the evidence or judge the credibility of witnesses. *Id.*

### B. Determination of the Special Litigation Committee

Following the Cutshalls' initiation of their shareholder's derivative action

6. In *Auerbach,* the Court of Appeals of New York held that, "While the court may properly inquire as to the adequacy and appropriateness of the committee's investigative procedures and methodologies, it may not under the guise of consideration of such factors trespass in the domain of business judgment." *Id.* at 634, 419 N.Y.S.2d at 929, 393 N.E.2d at 1002.

Thus, the courts cannot inquire as to which factors were considered by that committee or the relative weight accorded them in reaching that substantive decision ... Inquiry into such matters would go to the very core of the business judgment made by

the committee. To permit judicial probing of such issues would be to emasculate the business judgment doctrine as applied to the actions and determinations of the special litigation committee. Its substantive evaluation of the problems posed and its judgment in their resolution are beyond our reach.

*Id.* Accordingly, on appeal, we may inquire only as to whether the SLC was disinterested and whether it conducted its investigation in good faith. We may not, as the Cutshalls urge, examine the underlying merits of the SLC's determination.

against Wayne, the Board established an SLC, pursuant to Indiana Code section 23–1–32–4, to investigate the propriety of Wayne's further prosecution of the action. That committee consisted of Linville, Cummings, and Robertson. The law firm of Stark, Doninger & Smith was hired to guide the SLC in its investigation. As stated above, the decision of the SLC is presumed to be conclusive against the shareholder, unless the shareholder can prove that the SLC was not disinterested or that the SLC did not conduct its investigation in good faith. The Cutshalls contend that Stark Doninger & Smith's dual role as counsel for Wayne and the SLC tainted the SLC, causing it to be not disinterested, and that the SLC did not conduct its investigation in good faith.

### 1. Disinterested—Dual Representation

Indiana Code section 23–1–32–4(d) provides that a person is "disinterested," and thus, able to serve on an SLC, if the person:

(1) has not been made a party to a derivative proceeding seeking to assert the right or remedy in question, or has been made a party but only on the basis of a frivolous or insubstantial claim or for the sole purpose of seeking to disqualify the director or other person from serving on the committee;

(2) is able under the circumstances to render a determination in the best interests of the corporation; and

(3) is not an officer, employee, or agent of the corporation or of a related corporation. However, an officer, employee or agent of the corporation or a related corporation who meets the standards of subdivisions (1) and (2) shall be considered disinterested in any case in which

the right or remedy under scrutiny is not assertable against a director or officer of the corporation or the related corporation.

▪ In the present case, no member of the SLC was a party to the suit, nor were any of the SLC members an officer, employee or agent of the corporation or a related corporation. Thus, a traditional attack on the SLC's neutrality is not asserted in this case.[7] However, the Cutshalls argue that Stark Doninger & Smith's representation of both Wayne and the SLC undermined the integrity of the SLC and rendered the SLC unable to make a determination in the best interests of Wayne. Further, the Cutshalls argue that the appointment of the same counsel to advise Wayne and the SLC violated Indiana Code section 23–1–32–4(b), which provides: "In making a determination ... the committee is not subject to the direction or control of or termination by the board." Specifically, the Cutshalls argue that because Stark Doninger & Smith represented Wayne during the pendency of the SLC's investigation, that firm was under the influence of the Board, and thereby influenced the SLC to determine that the defendant-Board members' actions were not harmful to Wayne.

No reported decision in this state has addressed the issue of whether an SLC must be represented by counsel independent of the corporation on whose behalf a shareholder's derivative suit is brought. Consequently, the Cutshalls direct our attention to cases from other jurisdictions where courts have required SLCs to be represented by counsel independent from the corporation.[8] The Cutshalls rely

---

7. The Cutshalls argued to the trial court that the relationships between the Individual Defendants and the committee members prevented the SLC members from being disinterested. (R. 342–45.) However, the Cutshalls did not raise that issue on appeal.

8. The Cutshalls cite several cases for the proposition that counsel independent from the corporation is a requirement of a disinter-

ested SLC. See In re Perrigo Co., 128 F.3d 430 (6th Cir.1997); Joy v. North, 692 F.2d 880 (2d Cir.1982); Strougo v. Padegs, 1 F.Supp.2d 276 (S.D.N.Y.1998); Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co., 951 F.Supp. 679 (W.D.Mich.1996); Johnson v. Hui, 811 F.Supp. 479 (N.D.Cal.1991); Grafman v. Century Broadcasting Corp., 762 F.Supp. 215 (N.D.Ill.1991); Rosengarten v. Buckley, 613

heavily on *In re Oracle Securities Litigation*, 829 F.Supp. 1176 (N.D.Cal.1993), and *In Re Par Pharmaceutical Inc. Derivative Litigation*, 750 F.Supp. 641 (S.D.N.Y. 1990).

In *Oracle*, the federal district court was asked to approve a proposed settlement of a derivative action. *Id.* at 1177. A settlement committee, consisting of non-defendant directors, had been established and was advised by Oracle's in-house counsel. *Id.* at 1188. The court noted the general rule against dual representation of corporate and individual defendants in a derivative action, and recognized that "corporations involved in derivative suits [are required] to retain counsel with no prior ties to the individual defendants or the corporation." *Id.* at 1189. Thus, the trial court disapproved the settlement because it could not conclude that the directors who approved the settlement were acting with the independence required under state law. *Id.*

■ We agree with the holding in *Oracle* that dual representation of a corporation and individual defendants in a derivative suit would result in a conflict of interest; however, that is not the scenario with which we are dealing. First, in the case at bar, Wayne retained new counsel upon initiation of the Cutshalls' derivative action. Baker & Daniels, Wayne's prior counsel, stepped aside and Stark Doninger & Smith took over as corporate counsel and counsel to the SLC. Thus, the SLC was guided by counsel who had no prior ties to the In-

dividual Defendants. Furthermore, unlike in *Oracle*, where the committee was made up of directors of the corporation, who "are often beholden to the defendant directors who appointed them," *id.* at 1187, here, the SLC members had no prior ties to the corporation.[9]

In *Par*, a special litigation committee, consisting of two directors of the corporation, was established in response to the filing of a shareholder's derivative action. The committee was asked to investigate the allegations, but the board of the corporation retained the power to determine whether the corporation would go forward with the suit. The committee did not retain independent counsel, but was represented by counsel for the corporation and its board of directors. *Id.* at 644. Following the committee's recommendation that the corporation commence a state court action against certain directors, the board filed a motion to dismiss the federal complaint in favor of filing a shareholder's derivative suit in state court. The plaintiff shareholders argued that the board's decision to file a motion to dismiss was entitled to no deference because the committee was not independent and did not conduct its investigation properly. *Id.* at 645. The federal district court held that the advisory role of the committee resulted in the board's decision being entitled to no deference. Furthermore, the court held that the committee's procedures were flawed. *Id.* at 647. Specifically, the court held that the committee failed to retain independent counsel, as contemplated by New York and Delaware law, and that the absence of

F.Supp. 1493 (D.Md.1985); *Watts v. Des Moines Register and Tribune*, 525 F.Supp. 1311 (S.D.Iowa 1981); *Cuker v. Mikalauskas*, 547 Pa. 600, 692 A.2d 1042 (1997); *Lewis v. Boyd*, 838 S.W.2d 215 (Tenn.App.1992); *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979). Each of these cases does mention the retention of independent counsel to assist special litigation committees in their investigations. However, none of these cases address the specific issue of whether counsel, retained after the initiation of a shareholder's derivative action, may

represent both the corporation and the SLC. Because that is the factual scenario we are presented with in this case, we do not find the cases cited by the Cutshalls persuasive.

9. We recognize that the Board did suggest Linville, Cummings and Robertson as candidates for the SLC. However, unlike directors, the committee members would have very little, if anything, to lose by finding fault with the defendant-directors. As such, they are not "beholden" to the defendant-directors as were the committee members in *Oracle*.

independent counsel resulted in a conflict of interest. *Id.*

■■■ We note *Par's* strong language advocating independent counsel; however, we find the present case distinguishable. Specifically, in the present case, Stark Doninger & Smith were hired as corporate counsel, replacing Baker & Daniels *after* the Cutshalls filed their shareholder's derivative action. Stark Doninger & Smith had not represented Wayne prior to the suit, nor did they provide any representation to any of the individual directors who were named as defendants. Furthermore, we note that a lawyer who is retained by a corporation represents that corporation acting through its duly authorized constituents. Ind. Professional Conduct 1.13. *See also In re Consumers Power Company Derivative Litigation,* 132 F.R.D. 455, 475–76 (E.D.Mich.1990) (interpreting Michigan Rule of Professional Conduct 1.13, which is identical to Indiana's rule). Accordingly, Stark Doninger & Smith, as corporate counsel, was required to act in the best interests of Wayne, and not the individual Board members. Thus, the determinations made by Stark Doninger & Smith on behalf of Wayne were legal questions to which Stark Doninger & Smith provided answers that were in Wayne's, and not the Individual Defendants', best interests.

In *Consumers Power,* the law firm retained to assist a special litigation committee investigating a shareholder's derivative action was representing the corporation in a lawsuit that was proceeding at the time of the committee's investigation. The plaintiff-shareholders challenged the representation by the firm, contending that the firm's representation of the corporation and the SLC created a conflict of interest that tainted the committee. *Id.* at 474. However, the federal district court disagreed, holding that the client of the firm in the lawsuit and in its work with the committee was the corporation. *Id.* at 475–76. Further, because the firm had never provided representation for the individual defendant-directors, the firm's allegiance was to the corporate entity, and its representation of the committee did not create a conflict. *Id.* at 476–77.

Although *Consumers Power* is distinguishable from the present case, in that the firm in Consumers Power represented the corporation in a specific legal proceeding, while here, Stark Doninger & Smith provided general representation of Wayne for all corporate matters, we find guidance in its holding. Stark Doninger & Smith had no prior contacts with Wayne or its Board before the Cutshalls' shareholder's derivative suit was filed. Accordingly, Stark Doninger & Smith was independent of the Individual Defendants, and its allegiance was to Wayne and the SLC, a committee of Wayne. Thus, we hold that Stark Doninger & Smith's dual representation of both Wayne and the SLC during the pendency of the investigation, by itself, did not taint the SLC so as to render it disinterested.

We are also unpersuaded by the Cutshalls' argument that Stark Doninger & Smith passed Baker & Daniels' advice to the SLC members as its own. During its investigation, the SLC requested an explanation of the theories behind the Cutshalls' complaint and the Individual Defendants' defense to the complaint. Thus, attorneys for both the Cutshalls and the Individual Defendants had a chance to present the theories behind their respective positions to the SLC. Accordingly, the Cutshalls' argument that the legal opinions rendered by Baker & Daniels, as counsel for the Individual Defendants, were passed to the SLC as those of Stark Doninger & Smith is without merit. Consequently, we hold that the Cutshalls have failed to prove that the SLC was not disinterested.

### 2. Good Faith Investigation

■■■ The Cutshalls argue that the SLC's investigation was not conducted in good faith. Specifically, they argue that the SLC's cursory review of the documentary evidence and Stark Doninger & Smith's

failure to place witnesses under oath or to transcribe the interviews of the witnesses evidenced a lack of diligence and good faith in the investigation. The Cutshalls also complain about the committee members' failure to take notes during their investigation. Further, the Cutshalls argue that the few meetings of the SLC were inadequate to accomplish the task that the SLC was assigned. We disagree.

The official comments to Indiana Code section 23–1–32–4(c) provide, in pertinent part: " 'Good faith' will depend in part on the adequacy and appropriateness of the committee's investigatory procedures, which in turn will depend on the nature and complexity of the claim." Further, under *Auerbach*, a plaintiff shareholder challenging the good faith of an SLC's investigation must prove that the SLC's investigation was "so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham. . . ." *Auerbach*, 393 N.E.2d at 1003.

The allegations in the Cutshalls' complaint involved alleged wrongdoing by directors of Wayne, a closely-held corporation. As such, the procedure adopted by the SLC was relatively quick and informal. The record reveals that the SLC committee members reviewed over 2,000 pages of documents pertaining to the allegations in the Cutshalls' complaint. Although few notes were taken, each committee member testified that they spent time reviewing the documents. In addition to document review, the SLC interviewed all parties to this action, with the exception of Amy and Stacey. Although the interviewees were not placed under oath and their testimony was not transcribed, we are not convinced that this reveals that the investigation was not conducted in good faith. *See Strougo v. Padegs*, 27 F.Supp.2d 442, 452 (S.D.N.Y.

1998) (holding that "[i]n the majority of cases in which derivative actions have been terminated by special litigation committees, the interviews were not taken under oath or before a stenographer"). The interviews of the witnesses were recorded; therefore, had the committee members needed to review testimony, the interviews could have been transcribed at their request. Finally, the SLC met four times, and its report, consisting of fourteen single-spaced pages, indicates that it addressed each of the Cutshalls' claims of misconduct. This evidence leads us to the conclusion that the Cutshalls have failed to demonstrate that the investigation was not conducted in good faith. Accordingly, we hold that the trial court's dismissal of the Cutshalls' shareholder's derivative action was not clearly erroneous.

## II. The Cutshalls' Direct Action

The Cutshalls also contend that the trial court erred by dismissing their direct action against the Individual Defendants. Specifically, the Cutshalls argue that the decision of the SLC does not apply to their direct action against the Individual Defendants, and as such, the trial court erred by dismissing their direct action.

### A. Standard of Review – Direct Action

The well established general rule is that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation, even if the value of their stock is impaired as a result of the injury. *Barth v. Barth*, 659 N.E.2d 559, 560 (Ind. 1995) ("*Barth I*"). However, our supreme court has adopted the rule that:

> In the case of a closely held corporation,[10] the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an indi-

---

**10.** "A closely-held corporation is one which typically has relatively few shareholders and whose shares are not generally traded in the securities market." *Barth I*, 659 N.E.2d at 561 n. 5. Further, "shareholders in a closely-

held corporation stand in a fiduciary relationship to each other, and as such, must deal fairly, honestly, and openly with the corporation and with their fellow shareholders." *Id.* at 561.

vidual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Id.* at 562 (quoting A.L.I., *Principles of Corporate Governance* § 7.01(d)). The *Barth I* court observed that, "permitting such litigation to proceed as a direct action will exempt the plaintiff from the requirements of Ind.Code § 23–1–32–1 *et seq.*, including the provisions that permit a special committee of the board of directors to recommend dismissal of the lawsuit." *Id.*

 Applying our supreme court's holding in *Barth I*, this Court has held that we will review a trial court's dismissal of a direct action under an abuse of discretion standard, and we will not reverse the trial court's judgment unless it is clearly against the logic and effect of the facts and circumstances before the trial court.' *Barth v. Barth,* 693 N.E.2d 954, 957 (Ind. Ct.App.1998), *trans. denied ("Barth II ").* We will affirm the trial court if there is any rational basis for its decision. *Id.* In the present case, the trial court's order dismissing the Cutshalls' direct action was in the form of a general judgment. Therefore, we will affirm if the judgment is sustainable upon any theory consistent with the evidence, and we presume that the trial court correctly followed the law. *Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 240 (Ind.1997).

### B. Analysis

 In their motion to dismiss the Cutshalls' direct action, the Individual Defendants relied on the determination of the SLC to support their argument that the direct action should be dismissed. However, as stated in *Barth I*, a direct action is not subject to review by an SLC. Thus, to the extent that the trial court's dismissal of the derivative action rested on the SLC's determination that the derivative

action was not in the best interests of Wayne, the trial court's decision was in error. However, before reversing the trial court's decision, we must determine whether the dismissal is sustainable upon any theory consistent with the evidence.

 In *Barth I,* our supreme court held that a shareholder may proceed with a direct action, unless the direct action would: (1) unfairly expose the corporation or the defendants to a multiplicity of actions; (2) materially prejudice the interests of creditors of the corporation; or (3) interfere with a fair distribution of the recovery among all interested persons. 659 N.E.2d at 562. In the present case, the Individual Defendants have not shown, at this stage of the proceedings, that the direct action would cause any of the delineated results. First, besides the Cutshalls and the Individual Defendants, there are only two other shareholders, who between them, own 5% of Wayne's shares. Thus, the chance that the Cutshalls' direct action would unfairly expose Wayne or the Individual Defendants to a multiplicity of actions is very slim. Further, Wayne is in the process of liquidating, and all creditors of Wayne are being paid as a result of the liquidation. Finally, the trial court was presented with no evidence that the Cutshalls' direct action would interfere with a fair distribution of the recovery among all interested persons. Thus, we hold that the trial court abused its discretion by dismissing the Cutshalls' direct action against the Individual Defendants, and we remand with instructions to the trial court to reinstate the direct action.

Affirmed in part, reversed in part, and remanded.

SULLIVAN, J., and VAIDIK, J., concur.