867 N.E.2d 252 (2007)
In re the Matter of the ADOPTION OF J.D.B.
Gregory Lucas, Appellant-Respondent,
v.
C.F.K., Appellee-Petitioner, and
Marion County Department of Child Services, Appellee-Intervenor.
No. 49A04-0701-CV-1.
Court of Appeals of Indiana.
May 31, 2007.
*253 Patricia Caress McMath, Indianapolis, IN, Attorney for Appellant.
Barbara J. Baird, Law Office of Barbara J. Baird, Indianapolis, IN, Attorney for Appellee C.F.K.
Kimberly Spindler, Marion County Department of Child Services, Indianapolis, IN, Attorney for Appellee Marion County Department of Child Services.

OPINION
CRONE, Judge.

Case Summary
Gregory Lucas appeals the decree granting the adoption of J.D.B. to C.F.K. We affirm.

Issues
Lucas raises two issues, which we restate as follows:
I. Whether the probate court had jurisdiction to rule on the adoption petition notwithstanding the pending Child In Need of Services ("CHINS") and termination of parental rights proceedings in the juvenile court; and
II. Whether the probate court's decision that Lucas's consent was not required for adoption is contrary to law.

Facts and Procedural History
In November or December of 2002, Lucas and L.B. had sexual intercourse. L.B. was then fourteen years old, and Lucas was twenty-nine years old. On August 20, 2003, L.B. gave birth to J.D.B.J.D.B.'s birth certificate did not name a father. However, a report that Lucas committed sexual misconduct with L.B., a minor, was substantiated. Appellant's App. at 30. Criminal charges were not pursued because L.B.'s mother declined to press charges. Id.[1]
*254 On January 12, 2004, L.B. was in the Juvenile Detention Center.[2] On that day, the Marion County Department of Child Services ("DCS") filed a petition in the Marion Superior Court, Juvenile Division, alleging that J.D.B was a CHINS, and J.D.B. became a ward of DCS.[3] J.D.B. was placed in foster care with C.F.K., with whom he has since remained. Lucas initially denied paternity, but eventually entered an admission to paternity of J.D.B. on November 4, 2004.
On November 10, 2004, DCS filed a petition in juvenile court to terminate the parent-child relationship ("TPR") between L.B. and J.D.B. Also in November, the juvenile court issued an order suspending visitation between Lucas and J.D.B. Tr. at 105. On November 29, 2004, DNA testing was completed, which indicated a 99.99% probability that Lucas was J.D.B.'s father. Appellant's App. at 30.
On March 17, 2005, in an internal meeting, DCS approved C.F.K.'s adoption of J.D.B. Id. at 28. On May 4, 2005, the juvenile court granted DCS's petition to terminate the parent-child relationship between L.B. and J.D.B.
On June 10, 2005, C.F.K. filed a petition for adoption in the Marion Superior Court, Probate Division, seeking to adopt J.D.B. and alleging that the possible biological father was known to her, but that his consent was not required because J.D.B. was born out of wedlock and was conceived as a result of Lucas's sexual misconduct with a minor. Id. at 10-11.
Sometime in June, July, or August 2005, DCS filed a petition in juvenile court to terminate the parent-child relationship between Lucas and J.D.B. Id. at 29.[4]
On August 4, 2005, Lucas filed a motion in the probate court to contest C.F.K.'s adoption of J.D.B. In his motion, Lucas stated that he was challenging whether his consent to adoption was unnecessary in a TPR proceeding that was currently pending in the juvenile court, and requested that the probate court stay all proceedings until the juvenile court and/or the Court of Appeals had determined his rights. Id. at 13.
Lucas then filed a petition to establish paternity in the Marion Circuit Court, Paternity Division. On October 11, 2005, that court issued a judgment of paternity and support, establishing Lucas's paternity of J.D.B. Ex. at 4-6. The paternity judgment indicated that decisions regarding custody, visitation, and child support would be determined at a November 18, 2005 hearing. Id. The record before us is silent as to whether this hearing was held.
Sometime before December 31, 2005, DCS's legal division determined that because J.D.B. was born out of wedlock and was conceived as a result of Lucas's sexual misconduct with a minor, Lucas's consent to adoption was not required. Appellant's App. at 28, 30. On February 24, 2006, DCS requested that the probate court hold a hearing on whether Lucas's consent to adoption was required. On March 2, 2006, *255 DCS filed its consent to C.F.K.'s adoption of J.D.B. in the probate court. Id. at 21.
On March 21, 2006, the probate court held a hearing to determine whether Lucas's consent to adoption was required. Lucas argued that the probate court did not have jurisdiction to rule on the adoption. Tr. at 6-7. Additionally, he argued that he had not committed sexual misconduct with L.B. On August 7, 2006, the probate court issued an order finding that Lucas's consent was not required. Appellant's App. at 41.
On September 25, 2006, the probate court held a hearing on C.F.K.'s adoption petition. J.D.B.'s guardian ad litem testified that J.D.B. had clearly bonded with his foster mother and that the adoption was in his best interest. Tr. at 92-93. The DCS case manager for J.D.B. testified that DCS did not recommend that J.D.B. be placed in Lucas's care because Lucas had not completed the services ordered by the juvenile court in the CHINS proceeding. Id. at 105. The case manager also testified that DCS consented to the adoption. The probate court issued its decree of adoption, affirming its August 7 order and granting C.F.K.'s petition to adopt J.D.B. Lucas now appeals.

Discussion and Decision

I. Jurisdiction
Lucas asserts that because a CHINS proceeding and a TPR proceeding were pending in juvenile court, the probate court did not have jurisdiction to rule on C.F.K.'s adoption petition.[5] Initially, we note that the probate court has exclusive jurisdiction in all adoption matters. Ind. Code § 31-19-1-2. Juvenile courts, with some exceptions, have exclusive original jurisdiction over CHINS cases. Ind.Code § 31-30-1-1. Probate courts have concurrent original jurisdiction with juvenile courts in proceedings on a petition to terminate the parent-child relationship involving a CHINS. Ind.Code § 31-35-2-3.
Often CHINS, TPR, and adoption proceedings involve the same parties. In Matter of Adoption of T.B., our supreme court resolved the jurisdictional overlap by focusing on the nature of the proceedings. 622 N.E.2d 921, 923-24 (Ind.1993). There, an adoption petition was filed in circuit court in 1986 to adopt T.B., who was then a ward of Family and Children Services ("FCS"). The adoption was granted. After her adoption, T.B. developed progressively worse behavioral problems. In 1991, T.B. ran away from home, and her adoptive mother sought help from the juvenile court, which found T.B. to be a CHINS and placed her in a residential care facility. Subsequently, T.B.'s adoptive mother filed a petition to revoke adoption in the circuit court that had granted the adoption. FCS moved to dismiss the adoptive mother's petition, contending that the circuit court lacked jurisdiction. The circuit court denied the motion and ultimately issued an order revoking the adoption. The supreme court held that the circuit court had properly exercised its jurisdiction in ruling on the petition to revoke T.B.'s adoption. The supreme court explained,

*256 An action for adoption and a CHINS proceeding . . . are separate actions which affect different rights. The CHINS proceeding is directed at helping the child directly by assuring that the child receives necessary assistance. Adoption, on the other hand, establishes a family unit. An adoption severs the child entirely from its own family tree and engrafts it upon that of another. As a result of the adoption, the adopted child becomes the legal child of the adoptive parent.
The legislature established the jurisdiction of juvenile courts and probate courts. The juvenile court was expressly given jurisdiction over CHINS proceedings and, similarly, a court with probate jurisdiction was expressly given jurisdiction over adoption matters. The power to adjudicate either matter does not divest the other court of its respective jurisdiction. Consequently, a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding.
Id. at 924 (citations and quotation marks omitted).
In In re Adoption of E.B., another panel of this Court distinguished T.B. and concluded that the probate court had not erred in denying a petition to adopt while a CHINS proceeding was still pending. 733 N.E.2d 4, 6 (Ind.Ct.App.2000), trans. denied. In E.B., the Office of Family and Children ("OFC") formulated a reunification plan for E.B., who had been found a CHINS, and her father. E.B.'s father complied with all the plan's requirements, including anger management and parenting classes, and the OFC recommended reunification. However, because E.B.'s father lived in Georgia, reunification could not be finalized until the State of Georgia approved an interstate compact. The petition to adopt E.B. was filed while the CHINS action was delayed in waiting for receipt of the interstate compact. The E.B. court concluded that the specific fact situation carried the case outside the holding in T.B. Id. The E.B. court explained that the CHINS proceeding was directed at reunifying father and daughter, whereas the adoption proceeding involved a third party attempting to adopt a child when the father's parental rights had not been terminated. Id.
Here, Lucas stresses that this situation presents the same factual situation as that presented in E.B., and therefore E.B. is dispositive. We disagree. In E.B., OFC was actively pursuing reunification and was not seeking to terminate the father's parental rights. As Lucas succinctly notes, "In E.B., the two proceedings were at odds with each other." Reply Br. at 1. Here, in contrast, DCS was not pursuing reunification,[6] DCS filed a petition to terminate Lucas's parental rights to J.D.B.,[7] and DCS consented to C.F.K.'s adoption of J.D.B. The two proceedings in this case are not at odds with each other. Consequently, E.B. does not control.
*257 In sum, there are simply no circumstances present that carry this case outside the ambit of T.B. The CHINS proceeding is directed at helping J.D.B., and through this process DCS has determined that adoption is in J.D.B.'s best interest. To bring this plan to fruition, DCS filed a petition to terminate Lucas's parental rights. The purpose of the adoption proceeding is to establish a new family unit for J.D.B., which, under these circumstances, is entirely consistent with the CHINS and TPR proceedings. Thus, this is a case in which "a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding." See T.B., 622 N.E.2d at 924.
However, our examination is incomplete in light of our recent decision in In re Infant Girl W., in which another panel of this Court employed an approach different from that used in T.B. and E.B. to resolve this jurisdictional tangle. 845 N.E.2d 229, 241 (Ind.Ct.App.2006), trans. denied. There, a same-sex couple filed a joint petition to adopt M.A.H., a CHINS, and the probate court granted the petition over the objection of OFC. OFC appealed. Thereafter, the couple, as the child's adoptive parents, filed a motion to dismiss the CHINS proceeding. The juvenile court denied the motion and ordered that the child remain in CHINS placement and the care of OFC. The couple appealed the juvenile court's order.[8] This Court held that the probate court properly exercised jurisdiction over the adoption petition. Id. at 241.
In so holding, the Infant Girl W. court distinguished T.B., observing that T.B. involved a revocation of a previously granted adoption. The Infant Girl W. court agreed that the outcome of E.B. was correct. However, rather than focusing on the respective goals of the pending actions, the Infant Girl W. court relied upon Indiana Code Section 31-19-9-1, sometimes referred to as the consent statute, to support its determination that the probate court had jurisdiction to grant the adoption petition.
Indiana Code Section 31-19-9-1 provides in relevant part,
Except as otherwise provided in this chapter, a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by . . . [e]ach person, agency, or county office of family and children having lawful custody of the child whose adoption is being sought.
Further, if OFC refuses to consent to the adoption, the probate court must determine whether the OFC is acting in the best interests of the child in withholding its consent. Ind.Code § 31-19-9-8(a)(10). The Infant Girl W. court observed that the consent statute permitted OFC, as the child's legal guardian, to express its opinion regarding the adoption, and, if the probate court found that OFC's consent to adoption was unreasonably withheld pursuant to Indiana Code Section 31-19-9-8(a)(10), this Court could review the probate court's determination for reasonableness. Infant Girl W., 845 N.E.2d at 241; see also In re Adoption of L.C., 650 N.E.2d 726, 729-30 (Ind.Ct.App.1995) (stating that in order to adopt child despite lack of consent from county agency having lawful custody, prospective parents must show that agency was not acting in child's best interests in withholding consent), trans. denied. The Infant Girl W. court concluded, "the mere fact that there were pending CHINS and TPR proceedings did not in any way divest the Probate Court of its exclusive jurisdiction over the Adoption Case, inasmuch as the consent statute enabled *258 OFC, as M.A.H.'s legal guardian and as petitioner in the TPR Case, to voice its concerns and opinions about the Parents' petition to adopt." Infant Girl W., 845 N.E.2d at 241.
Returning now to the instant case, we observe that unlike OFC in Infant Girl W., DCS consented to, rather than opposed, the adoption. Nevertheless, Indiana Code Section 31-19-9-1 supports the same conclusion we reached in our analysis focusing on the goals of the CHINS, TPR, and adoption proceedings. This is so because the consent statute permitted Lucas to participate in the adoption proceedings. See Ind.Code § 31-19-9-1 (requiring consent of father who's paternity has been established). While ultimately the adoption court determined that his consent was not needed, the adverse outcome does not negate the fact that Lucas had an opportunity to present evidence to show that his consent was required and appeal the probate court's ruling that his consent was not required.[9] The consent statute also permitted DCS to voice its assessment of C.F.K.'s adoption of J.D.B. DCS conveyed its approval of the adoption by providing its consent, and J.D.B.'s case manager testified in both hearings. Accordingly, we conclude that the probate court had jurisdiction to rule on the adoption petition.

II. Consent
Lucas next challenges the probate court's finding that his consent was not required for adoption. The probate court found that Lucas's consent to adoption was unnecessary pursuant to Indiana Code Section 31-19-9-8(a)(4)(C), which provides in relevant part that consent is not required from the biological father of a child born out of wedlock who was conceived as a result of sexual misconduct with a minor. Lucas incorrectly asserts that C.F.K. had the burden of proving that J.D.B. was conceived as a result of Lucas's sexual misconduct with a minor. Appellant's Br. at 6. Contrary to his assertion, when a parent contests an adoption in which the petitioner alleged that the parent's consent is unnecessary under Indiana Code Section 31-19-9-8(a)(4)(C), the parent bears the burden of proving that the child was not conceived under the circumstances set forth in XX-XX-X-X(a)(4)(C). Ind.Code § 31-19-10-1.2(b)(2). "The absence of a criminal prosecution and conviction is insufficient to satisfy the burden of proof." Id. Thus, Lucas had the burden of proving that J.D.B. was not conceived as a result of sexual misconduct with L.B. Further, he was required to make that showing with clear and convincing evidence. See Ind.Code § 31-19-10-0.5 ("The party bearing the burden of proof in a proceeding under this chapter must prove the party's case by clear and convincing evidence.").
Because Lucas had the burden of proof, he appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. Mominee v. King, 629 N.E.2d 1280, 1282 (Ind.Ct.App. 1994). A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead unerringly to a conclusion different from that reached by the trial court. Cutshall v. Barker, 733 N.E.2d 973, 978 (Ind.Ct.App.2000). In determining whether the judgment is contrary to law, we will not reweigh the evidence or judge the credibility of witnesses. *259 Fischer-Marsh v. Fischer, 822 N.E.2d 1055, 1059 (Ind.Ct.App.2005).
Indiana Code Section 35-42-4-9 provides, "A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor[.]" Lucas does not dispute that he and L.B. had sexual intercourse when he was at least eighteen years old and L.B. was between fourteen and sixteen years old. Rather, Lucas maintains that Warren v. State established that criminal intent is an element of sexual misconduct with a minor and that he did not commit sexual misconduct with a minor because he did not knowingly or intentionally perform or submit to sexual intercourse with L.B.[10] 701 N.E.2d 902, 905 (Ind.Ct.App.1998), trans. denied (1999). Specifically, Lucas argues that L.B. had sexual intercourse with him while he was asleep, he did not wake up, and he had no knowledge of having had sex with L.B. As we review his argument, we are mindful that it was Lucas's burden to establish that L.B. had sexual intercourse with him without his knowledge or intent.
At the consent hearing, L.B. testified that on the night she and Lucas had sexual intercourse, they were alone together at her family home. She saw Lucas take some pills for his migraine and fall asleep. After Lucas had been asleep for an hour, she slid his pants off and began to have sex with him. Tr. at 17. However, she stopped because Lucas did not develop an erection. Id. at 22. She was not even sure whether he had ejaculated, but assumed he did because she got pregnant. Id. She put his pants back on. Id. at 17. He did not appear to be awake during any of this activity. Id.
Lucas merely testified that his position had consistently been that he "didn't know if [J.D.B.] was [his child] or not." Id. at 30. He presented no evidence regarding the medication he took that night, such as its name or the dosage he consumed.[11] He presented no evidence that the medication was capable of causing him, a 180-pound man, to remain asleep while a teenage girl, weighing only 120 pounds, removed his pants and had sexual intercourse with him. Contrary to Lucas's assertion, we think the fact that a twenty-nine year old man and a fourteen-year old girl had sexual intercourse and conceived a child solidly supports an inference that the man intended and/or knew that he was engaging in sexual intercourse. It was within the province of the probate court to assess the credibility of the witnesses and weigh the evidence. Lucas's argument is an invitation to reweigh the evidence, which we may not do. Thus, we cannot say that the probate court's decision that Lucas's consent to adoption was not required is contrary to law.
For the foregoing reasons, we affirm the probate court's judgment granting C.F.K.'s petition for adoption.
Affirmed.
BAKER, C.J., and FRIEDLANDER, J., concur.
NOTES
[1] The adoption summary indicates that L.B.'s mother declined to press charges because Lucas "was caring for the child." Appellant's App. at 30. The record is silent as to whether Lucas was providing child support or physically caring for the child.
[2] The record before us does not explain the reason for L.B.'s placement in the Juvenile Detention Center.
[3] The record before us does not include any CHINS documents.
[4] The DCS adoption summary states that the TPR petition was filed June 16, 2005. Appellant's App. at 29. Other evidence in the record suggests that the TPR petition was filed July 7, 2005. Id. at 34. Both Lucas and DCS state, without citation to the record, that the TPR petition was filed August 11, 2005. Appellant's Br. at 1; Appellee's Br. at 3. C.F.K. does not provide an exact date, but states that the TPR petition was filed sometime before she filed her petition for adoption. Appellee C.F.K.'s Br. at 1.
[5] We note that in K.S. v. State, our supreme court discussed this state's "casual use of the notion of jurisdiction." 849 N.E.2d 538, 541 (Ind.2006). The supreme court explained that there are only two kinds of jurisdiction: "Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties." Id. at 540. According to the supreme court, there is a tendency to mischaracterize many kinds of procedural errors as questions of jurisdiction. Id. at 542. Our reading of K.S. suggests that the jurisdictional issue raised here might be more properly explored in terms of comity. However, we address the issue as the parties' have argued it.
[6] While Lucas asserts that "a CHINS action was pending to attempt to reunify [him] with [J.D.B.]", he fails to cite any evidence to support this assertion. Reply Br. at 1. He also asserts that he "has participated in services through the CHINS action in order to be reunified with [J.D.B.]" without citation to the record. Id. at 2. To the contrary, the evidence in the record before us demonstrates that DCS was not pursuing reunification as an option because Lucas failed to complete the services ordered by the juvenile court. Tr. at 105.
[7] While Lucas complains that his parental rights have not been terminated, this fact is directly attributable to him. The juvenile court stayed the TPR proceeding pending the outcome of the adoption proceeding at Lucas's request. For this reason, we find this argument disingenuous.
[8] The CHINS and adoption proceedings were consolidated for appeal.
[9] Lucas contends that the probate court did not address his interest in proving his parental fitness. Reply Br. at 2. Lucas requested a stay of the TPR proceeding in which his parental fitness would have been explored. Having chosen not to proceed with the TPR action, he cannot now complain that he had no opportunity to demonstrate his parental fitness.
[10] At the consent and adoption hearings, Lucas argued that he did not knowingly or intentionally have sexual intercourse with L.B. Tr. at 36, 54. Consequently, Lucas's contention that the trial court did not consider whether he had the requisite criminal intent to commit sexual misconduct with a minor is unfounded.
[11] At the adoption hearing, Lucas testified that he took non-prescription-strength codeine for his migraines. Tr. at 81.