In the Matter of the ADOPTION
OF a Minor Child, H.N.P.G.

No. 06A05–0703–CV–184.

Court of Appeals of Indiana.

Jan. 11, 2008.

Carol Sparks Drake, Whitestown, IN, Attorney for Appellant.

Michael P. Bishop, Heather Wysong Zaiger, Cohen, Garelick & Glazier, P.C., Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Blake O. ("Blake") filed a motion in Boone Superior Court to contest the adoption of his biological daughter, H.N.P.G. His motion was denied and the court granted H.N.P.G.'s foster parents' petition to adopt. Blake appeals and raises several arguments, which we consolidate and restate as:

I. Whether the Boone Superior Court's decree of adoption is void for lack of jurisdiction;

II. Whether the probate court abused its discretion when it admitted deposition testimony of H.N.P.G.'s mother over Blake's objection; and,

III. Whether the trial court's determination that Blake's consent was not required to the adoption is clearly erroneous.

We affirm.

### Facts and Procedural History

H.N.P.G. was born on February 25, 2004. She was placed in foster care because she tested positive for cocaine. She was returned to her mother approximately one month later. However, on July 31, 2004, she was placed in foster care because her mother was arrested.

James George was identified as H.N.P.G.'s father at birth. However, Steve Breedlove was identified as her father when the Boone County Department

of Child Services ("the BCDCS") filed its petition naming H.N.P.G. as a child in need of services ("CHINS"). H.N.P.G.'s mother told both Breedlove and Blake that one of them was H.N.P.G.'s father. Blake did not initially believe that H.N.P.G. was his child. In the summer of 2004, a paternity test established that Breedlove was not H.N.P.G.'s father.

Blake has been incarcerated since June 19, 2003, due to his convictions for dealing in methamphetamine and possession of precursors with intent to manufacture methamphetamine for which he received an aggregate eighteen-year sentence. The BCDCS first became aware that Blake might be H.N.P.G.'s father at a CHINS hearing held on February 23, 2005. Five days later, the BCDCS filed a petition to terminate the parental rights of both H.N.P.G.'s mother and Blake. Blake then requested a paternity test. Paternity testing was finally performed on December 23, 2005, and the test confirmed that Blake is H.N.P.G.'s father.

H.N.P.G.'s mother's parental rights were terminated on April 4, 2006. However, on May 30, 2006, the Boone Circuit Court denied the BCDCS's petition to terminate Blake's parental rights stating, "Termination of Father's Parental Rights at this stage of the proceeding would not survive appeal and would only serve to exacerbate the child's best interests." Appellant's App. p. 120.

Both Blake's mother and stepfather, Dawn and John Robertson ("the Robertsons") and H.N.P.G.'s foster parents, Paul H. and Kimberly H. ("the Foster Parents") filed petitions to adopt H.N.P.G. in Boone Superior Court in March of 2006. The court consolidated the petitions to adopt H.N.P.G. into one proceeding under cause number 06D01–0603–AD–4. On July 3, 2006, Blake moved to dismiss the adoption proceedings as moot and filed a motion to intervene. The court granted Blake's motion to intervene. In response, the Foster Parents filed an amended petition for adoption alleging that Blake abandoned and deserted H.N.P.G., and that he is an unfit parent. On August 9, 2006, Blake filed a motion to contest the adoption.

A guardian ad litem was appointed on September 12, 2006. An adoption hearing was held on January 25 and 26, 2007. On February 23, 2007, the probate court issued findings of fact and conclusions of law and found in pertinent part:

1. [H.N.P.G.'s] biological father, [Blake], is a convicted felon that is currently incarcerated at the Pendleton Correction[al] Facility[.] Not including potential time cuts, [Blake] will not be released from prison until 2017. Blake [ ] testified that if he is able to obtain time cuts he might be able to be released some time in 2010.

* * *

20. Despite the fact that [Blake] knew that he had sex with [H.N.P.G's mother] approximately nine months prior to the date that [H.N.P.G.] was born, that Breedlove was not the father, and that [H.N.P.G.'s mother] believed that he was [H.N.P.G.'s] father, [Blake] doubted [her] allegations and took no action.

21. To date, [Blake] has never met [H.N.P.G.], never communicated with [her], and has never provided any support to [her].

* * *

26. On May 10, 2005, approximately 15 months after [H.N.P.G.'s] birth, [Blake] first requested a DNA test to determine whether he is [her] biological father.

27. On January 14, 2006, the DNA tests confirmed that [Blake] is in fact [H.N.P.G.'s] biological father. At this

time, the Robertsons first expressed an interest in [H.N.P.G.] and, on March 20, 2006, filed a Petition to Adopt [H.N.P.G.]. The Robertsons' Petition attached a document purportedly evincing [Blake's] consent to the Robertsons adopting [H.N.P.G.].

28. At the time that [Blake] signed his purported consent, [Blake] did not want his parental rights over [H.N.P.G.] severed.

29. As of the date of the hearing, [Blake] still does not want his parental rights over [H.N.P.G.] severed.

30. Rather, [Blake] wants the Robertsons to have "custody" of [H.N.P.G.] until he gets out of prison so that he may have the opportunity to establish a parent-child relationship with [H.N.P.G.] at that point.

* * *

41. No person with formal training or experience in child psychological development qualified to render expert opinion testimony, testified that in their opinions it would be in [H.N.P.G.'s] best interest for the Court to grant the Robertsons' Petition to Adopt. The evidence from child development professionals weighs in favor of the [Foster Parents] over the Robertsons.

* * *

53. [H.N.P.G.] has experienced, with the Robertsons, three (3) hours of mostly supervised visitation approximately every two (2) weeks since August of 2006 on a total of eleven (11) occasions.

Appellant's App. pp. 20–29. Clinical Psychologist Larry Wooley, Psychologist Sarah Norris, Guardian Ad Litem Kandi Killin, and Case Manager Regina Ley all testified that granting the Foster Parents' petition to adopt [H.N.G.P.] was in her best interests.

The court concluded that Blake's consent to the Foster Parents' adoption petition was not required because 1) Blake "failed without justifiable cause to communicate significantly with [H.N.P.G.] for a period of at least one (1) year when he was able to do so", and 2) "the [Foster Parents] have proven by clear and convincing evidence that [Blake] is an 'unfit' parent and that it would be in [H.N.P.G.'s] best interests to grant their petition for adoption." *Id.* at 31–32. The court also concluded that Blake's consent to the Robertsons' petition was not valid and it would not be in H.N.P.G.'s best interests to grant their petition. Finally, the court granted the Foster Parents' petition concluding, "[t]he evidence presented at the hearing in this matter overwhelmingly established that granting the [Foster Parents'] Petition to Adopt [H.N.P.G.] would be in [her] best interests." *Id.* at 37. Blake now appeals.

## Standard of Review

When we review a probate court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of M.A.S.*, 815 N.E.2d 216, 218 (Ind.Ct.App.2004) (citing *Rust v. Lawson*, 714 N.E.2d 769, 771 (Ind. Ct.App.1999), *trans. denied*). "We will not reweigh the evidence but instead will examine the evidence most favorable to the [probate] court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision." *Id.* at 218–19. The [probate] court's decision is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.*

Moreover, the [probate] court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A).

Thus, we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. We will not set aside the findings or the judgment unless they are clearly erroneous. The trial court's findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them. A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings.

*In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind.Ct.App.2006).

## I. Jurisdiction

First, Blake argues that the Boone Superior Court lacked jurisdiction to adjudicate the Foster Parents' petition to adopt H.N.P.G. because CHINS proceedings were pending in Boone Circuit Court. Exclusive jurisdiction over adoption proceedings is vested with the probate courts of our State. Ind.Code § 31–19–1–2 (1998). Yet, with some exceptions, juvenile courts have exclusive jurisdiction over CHINS proceedings. Ind.Code § 31–30–1–1 (1998 & Supp.2007). Probate courts have concurrent original jurisdiction with juvenile courts over proceedings to terminate the parent-child relationship involving a CHINS. Ind.Code § 31–35–2–3 (1998).

■■■ CHINS, termination of parental rights, and adoption proceedings often involve the same parties.

An action for adoption and a CHINS proceeding, however, are separate actions which affect different rights. The CHINS proceeding is directed at helping the child directly by assuring that the child receives necessary assistance. Adoption, on the other hand, establishes a family unit. An adoption "severs the child entirely from its own family tree and engrafts it upon that of another."

As a result of the adoption, the adopted child becomes the legal child of the adoptive parent.

The legislature established the jurisdiction of juvenile courts and probate courts. The juvenile court was expressly given jurisdiction over CHINS proceedings and, similarly, a court with probate jurisdiction was expressly given jurisdiction over adoption matters. The power to adjudicate either matter does not divest the other court of its respective jurisdiction. Consequently, a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding.

*Matter of Adoption of T.B.*, 622 N.E.2d 921, 924 (Ind.1993).

In *In re Adoption of E.B.*, 733 N.E.2d 4 (Ind.Ct.App.2000), *trans. denied*, a CHINS proceeding was pending and the permanent plan for E.B. was reunification with her father. E.B.'s father had complied with all of the reunification plan's requirements, including anger management and parenting classes. *Id.* at 5. E.B.'s foster parents filed a petition to adopt and E.B.'s father contested the adoption. The probate court denied the foster parents' petition. On appeal, our court affirmed because the CHINS proceeding was directed at reunifying father and E.B., and the foster parents were attempting to adopt E.B. when father's parental rights had not been terminated. *Id.* at 5–6.

However, where the Department of Child Services does not pursue reunification, our court has concluded that our holding in *E.B.* does not control. *See In re Adoption of J.D.B.*, 867 N.E.2d 252, 256 (Ind.Ct.App.2007), *trans. denied*. In *In re Adoption of J.D.B.*, the Department of Child Services filed a petition to terminate father's rights and consented to J.D.B.'s adoption by his foster parent. J.D.B.'s

father filed a motion in the probate court to contest the adoption and argued that the probate court did not have jurisdiction to adjudicate the foster parent's adoption petition. *Id.* at 254–55. The probate court granted the adoption petition and father appealed. Our court affirmed the probate court and stated:

> The CHINS proceeding is directed at helping J.D.B., and through this process DCS has determined that adoption is in J.D.B.'s best interest. To bring this plan to fruition, DCS filed a petition to terminate Lucas's parental rights. The purpose of the adoption proceeding is to establish a new family unit for J.D.B., which, under these circumstances, is entirely consistent with the CHINS and TPR proceedings. Thus, this is a case in which "a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding."

*Id.* at 257 (citing *Matter of Adoption of T.B.*, 622 N.E.2d at 924.), *trans. denied.* See also *In re Infant Girl W.*, 845 N.E.2d 229, 241 (Ind.Ct.App.2006) ("[T]he mere fact that there were pending CHINS and TPR proceedings did not in any way divest the Probate Court of its exclusive jurisdiction over the Adoption Case, inasmuch as the consent statute enabled OFC, as M.A.H.'s legal guardian and as petitioner in the TPR Case, to voice its concerns and opinions about the Parents' petition to adopt. Thus, we conclude that the Probate Court properly exercised jurisdiction over the Parents' joint petition to adopt M.A.H.").

██ In this case, the BCDCS attempted to terminate Blake's paternal rights, but its petition was denied because although the BCDCS "acted reasonably and expeditiously in this manner," Blake "has only recently been involved in this case. Despite the fact that he is in Prison and despite the fact that he might be in prison for a long time, the Court [is] not prepared to terminate his parental rights." Appellant's App. p. 119. Although the petition to terminate Blake's rights was denied, the BCDCS does not support the unification of Blake and H.N.P.G. Moreover, the BCDCS recommended that the court grant the Foster Parents' petition to adopt H.N.P.G. Tr. pp. 59, 88. The goal of the adoption proceeding is to create a new family unit for H.N.P.G. and this is entirely consistent with the goal of the pending CHINS proceedings. Consequently, we conclude that this is a case in which "a court with probate jurisdiction may adjudicate an adoption matter simultaneously with the juvenile court's adjudication of a CHINS proceeding." See *J.D.B.*, 867 N.E.2d at 257.

## II. Mother's Deposition

██ Next, Blake argues that the probate court abused its discretion when it admitted Mother's deposition into evidence at the adoption hearing. The admission or exclusion of evidence is a determination entrusted to the discretion of the trial court. *Lachenman v. Stice*, 838 N.E.2d 451, 464 (Ind.Ct.App.2005), *trans. denied.* Further, the trial court's evidentiary rulings are afforded great deference on appeal and are overturned only upon a showing of an abuse of discretion. *Bova v. Gary*, 843 N.E.2d 952, 955 (Ind.Ct.App. 2006).

██ H.N.P.G.'s mother was incarcerated on the date of the adoption hearing. "Pursuant to Ind[iana] Trial Rule 32(A)(3)(c), the deposition of a witness may be used by any party for any purpose if the court finds that a witness is unable to attend and testify because of age, sickness, infirmity, or imprisonment." *Jackson v. State*, 575 N.E.2d 617, 620 (Ind.1991).

Blake objected to the admission of Mother's deposition and argued that she was not unavailable. The court overruled his objection, stating:

> The Court would note for the record that this issue of whether or not [Mother] would be brought to the court to testify was discussed. In fact, there was a request for a Transport Order. There was a discussion prior to this hearing as to whether or not that would be done. Uh, the court reviewed the appropriate Rules of Evidence as well as the Trial Rule on presentation of depositions, Trial Rule 32. The Court has made a finding that the witness is unavailable due to incarceration and, [ ] is permitting the deposition to be used for substantive purposes.

Tr. p. 274.

Without citation to any authority, Blake asserts that "the substantial private interests implicated in this adoption made it erroneous to admit [Mother's] deposition." Br. of Appellant at 19. Next, Blake argues that his right to cross-examine witnesses was violated. However, Blake's counsel was present and cross-examined Mother during her deposition. *See* Ex. Vol., Petitioner's Ex. 5. We therefore conclude that the probate court acted within its discretion when it admitted Mother's deposition testimony pursuant to Trial Rule 32(A)(3)(c).

### III. Blake's Consent Was Not Required

■ Finally, Blake argues that the probate court erred when it determined that his consent to H.N.P.G.'s adoption was not required. Indiana Code section 31–19–11–1 provides that the probate court "shall grant the petition for adoption and enter an adoption decree" if the court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if con-

sent is necessary, to the adoption has been given." Consent to adoption is not required from:

> (11) A parent if:
>
> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>
> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Ind.Code § 31–19–9–8(a)(11) (1998 & Supp.2007). Therefore, the Foster Parents were required to prove by clear and convincing evidence that Blake's consent to the adoption was not required under section 31–19–9–8(a)(11).

The probate court issued the following conclusions of law in determining that Blake's consent to H.N.P.G.'s adoption was not required:

> 13. [Blake] has an extensive, undisputed and unfortunate history of engaging in criminal activities and abusing drugs which began when he was a juvenile and has continued through at least part of his incarceration. [Blake] has never provided support or housing to [H.N.P.G.] [Blake] is currently unable to provide [H.N.P.G.] support or housing. [Blake] is currently incarcerated and may remain incarcerated through 2017 which prevents him from being able to provide support or housing now or in the immediate future. (Citation omitted).
>
> 14. Furthermore, [Blake] has never maintained extended uninterrupted employment and there is a substantial probability that he will have a harder time finding employment as a convicted felon. (Citation omitted).
>
> 15. Based on his poor work history, his expected difficulty finding employment as a convicted felon, his historical inability and difficulty staying off drugs even

while incarcerated, and the lack of support he has provided to [H.N.P.G.], and not merely because of [Blake's] incarceration standing alone, there has been clear and convincing evidence presented to the Court that [Blake] is an unfit parent under Indiana law pursuant to Indiana Code § 31–19–9–8(a)(11).

16. Furthermore, the [Foster Parents] have shown that it would be in [H.N.P.G.'s] best interests if the court dispensed with [Blake's] consent under § 31–19–9–8(a)(11).

17. In fact, all of the evidence presented by individuals qualified to opine on what is in [H.N.P.G.'s] best interests supports the conclusion that it would be in [H.N.P.G.'s] best interest to grant the [Foster Parents'] Petition to Adopt [H.N.P.G.].

Appellant's App. pp. 33–34.

Due to his incarceration, Blake has never met or communicated with H.N.P.G. He has a substantial history of illegal drug use and has used drugs since he was a juvenile. He is currently incarcerated due to his convictions for dealing in methamphetamine and possession of precursors with intent to manufacture methamphetamine. His earliest possible release date is in 2010 and he may not be released until 2017, at which time H.N.P.G. will be approximately thirteen years old. Blake does not challenge the trial court's finding that he has historically been unable to maintain employment, and will likely have a difficult time finding employment and supporting H.N.P.G.

It is well-settled that "[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children." *Castro v. State Office of Family and Children,* 842 N.E.2d 367, 374 (Ind.Ct.App.2006), *trans. denied,* (citation omitted). After Blake's release from prison, there is no guarantee that he will be able to provide for H.N.P.G. or that he will ever obtain custody of her. H.N.P.G.'s needs are too important to force her to wait until a determination can be made that Blake will be able to be a fit parent to her. *See In re Involuntary Termination of Parental Rights of S.P.H.,* 806 N.E.2d 874, 883 (Ind.Ct.App.2004).

Finally, Blake does not challenge the probate court's finding that the Foster Parents' adoption of H.N.P.G. is in her best interests. Moreover, ample evidence supports the probate court's conclusion that H.N.P.G.'s best interests are served by granting the Foster Parents' adoption petition.

Under these facts and circumstances, we conclude that the probate court's findings that Blake is unfit to be a parent and it is in H.N.P.G.'s best interests to be adopted are supported by the evidence.[1] Consequently, the court's conclusion that Blake's consent to the adoption was not required is not clearly erroneous.[2]

---

1. The provisions of Indiana Code section 31–19–9–8 "are disjunctive; as such, either provides independent grounds for dispensing with parental consent." *In re T.W.,* 859 N.E.2d 1215, 1218 (Ind.Ct.App.2006). Consequently, we need not address Blake's argument that the probate court erred when it found that his consent was unnecessary because he knowingly failed to communicate with H.N.P.G. for at least one year without justifiable cause.

2. Throughout his brief, Blake asserts that the Boone Circuit Court's order denying the BCDCS's petition to terminate his parental rights is essentially a determination that Blake is not an unfit parent. Therefore, he asserts that the Boone Circuit Court's judgment "should have operated as a bar to relitigating in the adoption action whether Blake's rights could be terminated, i.e. relitigating the issue of whether Blake is an unfit parent[.]" Br. of Appellant at 17–18, 23.

## Conclusion

The Boone Superior Court properly adjudicated the Foster Parents' petition to adopt H.N.P.G. while CHINS proceedings were pending in Boone Circuit Court. Furthermore, H.N.P.G.'s biological mother's deposition was properly admitted. Finally, the probate court's conclusion that Blake's consent to the adoption was not required is not clearly erroneous. The Foster Parents proved that Blake is unfit to be a parent and that the adoption was in H.N.P.G.'s best interests.

Affirmed.

ROBB, J., and BRADFORD, J., concur.

While much of the same evidence was presented at both the termination of parental rights hearing and the adoption hearing, we cannot agree with Blake's assertion that the Boone Circuit Court's order denying the BCDCS's petition is in effect a determination of Blake's parental fitness. The Boone Circuit Court's order simply does not support Blake's assertion and his argument in this regard is without merit.