**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ROBERT L. BARLOW, II**
Barlow Law Office
Madison, Indiana

ATTORNEY FOR APPELLEE:

**JOSEPH A. COLUSSI**
Colussi Law Office
Madison, Indiana



FILED
Apr 18 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ADOPTION OF K. B. M., and L. B. M., minor children, | ) ) ) | |
| T. M., | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 39A01-1109-AD-423 |
| R. P. F., | ) ) | |
| Appellee-Petitioner. | ) ) ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Judge
Cause No. 39C01-0910-AD-18

**April 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Biological father ("T.M.") appeals the trial court's order following a hearing to determine whether R.P.F. ("Stepfather") needs T.M.'s consent to adopt K.B.M. and L.B.M., T.M.'s children with A.M.F. ("Mother"). We conclude that the trial court properly determined that T.M.'s consent to the adoption was not required due to his failure to communicate significantly with and provide for the care and support of his two children. We affirm.

**Facts and Procedural History**

K.B.M. and L.B.M. were born to Mother and T.M. in 2002 and 2004, respectively.[1] Mother and T.M. never married but lived together until early 2004, when they ended their relationship. The parties briefly reunited in 2006 and then again in 2007. Paternity was formally established in 2007, and T.M. was ordered to pay $561.60 per month in child support. T.M. was also ordered to pay his support arrearage of $3931.20 at a rate of $50 per month and to secure health insurance for the children. T.M. and Mother were living together when paternity was established, so they sought no parenting-time order.

In February 2008, T.M. and Mother separated for the final time. Over the next six months, Mother attempted to communicate with T.M. These attempts were unsuccessful, and Mother stopped contacting T.M. in July 2008. Almost a year later, in spring 2009, T.M. sent a few text messages to Mother and spoke to Mother once by phone. Mother

---

[1] According to the trial court's adoption decree, the children are now to be known as K.B.F and L.B.F., but for the sake of clarity, we refer to them by their previous initials.

2

informed T.M. that he could see the children, but she insisted on being present. T.M. did not accept Mother's offer.

Mother married Stepfather in March 2009. In October 2009, Stepfather filed a petition to adopt K.B.M. and L.B.M. The petition included Mother's consent to adopt the children and alleged that T.M.'s consent was not required due to his failure to support or communicate with the children for more than one year. T.M. contested the adoption.

The trial court held a hearing on Stepfather's petition in March 2011. When discussing his communication with Mother and the children, T.M. testified that after he and Mother ended their relationship in 2008, he did not know where Mother lived. He admitted, however, that he had her cell phone number and knew that she worked at the local pharmacy. Tr. p. 93, 108. Although T.M. testified that Mother discouraged his attempts to communicate with the children and would not always respond to his text messages, he conceded that he did not accept Mother's offer of supervised parenting time. *Id.* at 97. T.M. stated that he had either been employed or receiving unemployment since his final separation from Mother. *Id.* at 107-11. He said he was aware of his child-support obligation and arrearage and knew he had to provide medical insurance for the children. *Id.* at 102-03. Nevertheless, T.M. admitted he had never paid child support for K.B.M. and L.B.M. but provided financial support for his girlfriend's children even though he had no obligation to do so. *Id.* at 106. T.M. also admitted that he had not paid his arrearage and failed to secure medical insurance for the children.[2] *Id.* at 104, 106.

_____

[2] T.M. secured health insurance for K.B.M. and L.B.M. for four months in late 2007 to early 2008, but he never again provided insurance for the children. *See* Tr. p. 106-07.

After hearing additional testimony from Stepfather, Mother, and T.M.'s mother and girlfriend, the trial court took the matter under advisement.

The case was still pending in June 2011 when T.M. filed a motion to reopen evidence. With his motion, T.M. submitted affidavits from three of Mother's relatives. The affidavits included statements and opinions about Mother's parenting skills and feelings about T.M. In denying T.M.'s motion, the trial court stated that the evidence was cumulative of assertions made by T.M. at the hearing and that T.M. could have made the evidence available at that time with due diligence. *See* Appellant's App. p. 16.

The court ruled on the issue of consent in July 2011. The trial court explained that from February 2008 to October 2009, T.M. provided "no support of any kind" for the children and had "almost no contact" with Mother and the children.[3] *Id.* at 13. Further, although T.M. claimed that Mother discouraged his attempts to communicate with or see the children, the court stated that nothing prevented T.M. from seeking legal intervention to establish parenting time. *Id.* The court described the level of contact attempted by T.M. as falling "far short of having justifiable cause to not have significant communication with his daughters when able to do so." *Id.* at 15. The trial court concluded that T.M.'s consent to the adoption of K.B.M. and L.B.M. was not required.

T.M. filed a motion to correct errors, which was denied. He now appeals.

---

[3] The trial court's order states "In the period between February of 2008 and the filing of the petition for adoption on October 6, 2008 . . . ." *See* Appellant's App. p. 13. However, because the record clearly shows that the adoption petition was filed in October 2009, *id.* at 18, we refer to this time period accordingly.

4

**Discussion and Decision**

T.M. argues that the trial court erred when it determined that his consent to the adoption of K.B.M. and L.B.M. was not required because he failed without justifiable cause, for at least one year, to communicate significantly with the children when able to do so. T.M. also argues that the trial court erred by denying his motion to reopen evidence.

**I. Consent**

As a reviewing court, we will not disturb the trial court's decision in an adoption proceeding unless the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *In re Infant Girl W.*, 845 N.E.2d 229, 238 (Ind. Ct. App. 2006), *trans. denied.* We will neither reweigh the evidence nor reassess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision. *Id.* The trial court here entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). We thus employ a two-tiered standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. *In re Adoption of H.N.P.G.*, 878 N.E.2d 900, 904 (Ind. Ct. App. 2008), *trans. denied.* We will not set aside the findings or the judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous if the record is devoid of any evidence or reasonable inferences to support them, while a judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. *Id.*

Indiana Code section 31-19-9-8 specifies when consent to adoption is not required:

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

If an adoption petition alleges that a parent's consent to adoption is unnecessary under Subsection 31-19-9-8(a)(2) and that parent files a motion to contest the adoption, "a petitioner for adoption has the burden of proving that the parent's consent to the adoption is unnecessary" under Section 31-19-9-8. Ind. Code § 31-19-10-1.2. Here, because T.M. contested the adoption, Stepfather was required to prove by clear and convincing evidence that T.M.'s consent was not required.[4] *See In re Adoption of M.A.S.*, 815 N.E.2d 216, 219 (Ind. Ct. App. 2004).

### *A. Communication*

T.M. first asserts that the trial court erred by concluding that he failed without justifiable cause, for at least one year, to communicate significantly with K.B.M. and L.B.M. when able to do so. Specifically, T.M. argues that Mother frustrated his attempts to communicate with the children.

---

[4] It appears from the record that the trial court, at T.M.'s request, Tr. p. 122, employed the "clear, cogent, and indubitable evidence" standard. Appellant's App. p. 15. While we have held that the proper standard is the lesser clear and convincing standard, the trial court's imposition of the heightened standard is harmless error because it did not affect T.M.'s burden at trial, and because we find that Stepfather meets the appropriate lower standard on appeal. *See In re Adoption of M.B.*, 944 N.E.2d 73, 76-77 (Ind. Ct. App. 2011) (citing *M.A.S*, 815 N.E.2d at 220).

Efforts of a custodian to hamper or thwart communication between parent and child are relevant in determining the ability to communicate. *In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006). However, T.M.'s claim that Mother thwarted his attempts to communicate significantly with his children is undermined by his own testimony on the issue. T.M. testified that he sent infrequent text messages and spoke with Mother by phone once between February 2008 and October 2009. Even though he claimed that Mother discouraged his attempts, he also admitted that she offered him parenting time with the children, under her supervision.[5] T.M. did not take Mother up on her offer. As the trial court also noted, nothing prevented T.M. from seeking legal intervention to establish parenting time. Even assuming, as T.M. contends, that he "made an inquiry" with the court about custody or parenting time "prior to, or at least simultaneous with, being served with the . . . Petition for Adoption in this matter," Appellant's Br. p. 12, this inquiry does not negate the trial court's conclusion that T.M. did not communicate significantly with the children from February 2008 to October 2009.

The trial court did not err by concluding that T.M. failed without justifiable cause, for at least one year, to communicate significantly with K.B.M. and L.B.M. when able to do so.

*B. Care and Support*

---

[5] This fact makes distinguishable the cases T.M. cites for the proposition that Mother thwarted his efforts to communicate with the children. Specifically, T.M. cites *In re Adoption of Augustyniak*, in which father attempted to arrange parenting time with his son, but mother refused to let father see the child. 505 N.E.2d 868, 871 (Ind. Ct. App. 1987); *see also In re Adoption of A.K.S.*, 713 N.E.2d 896 (Ind. Ct. App. 1999), *trans. denied*. Here, Mother offered T.M. supervised parenting time with the children.

T.M. also claims that the trial court did not rely on the care and support clause of the consent statute, Section 31-19-9-8(a)(2)(B). T.M. goes on to state that "it is unclear whether part (B) could have provided an independent basis for concluding that [T.M.'s] consent was not required since the trial court did not provide any analysis on this issue under the standard of proof used in reaching its decision." Appellant's Br. p. 8. This assertion is not supported by the order.

In its order, the trial court stated that T.M. has never paid child support despite knowledge of his support obligation. Appellant's App. p. 13; *see* Tr. p. 102-03. The trial court also noted T.M.'s employment and voluntary financial support of his girlfriend's children. *Id.* This clearly indicates that the trial court considered the issue of care and support under Section 31-19-9-8(a)(2)(B) and concluded that T.M. failed to provide the required care and support despite his ability to do so. The trial court did not err in this conclusion.

Even if we were to accept T.M.'s argument that the trial court did not base its decision on Section 31-19-9-8(a)(2)(B), our analysis would remain unchanged. The court's finding that T.M. failed to communicate significantly with the children under Section 31-19-9-8(a)(2)(A) is a sufficient basis upon which the trial court could conclude that T.M.'s consent was not required. *See In re Adoption of D.C.*, 928 N.E.2d 602, 606 (Ind. Ct. App. 2010) (citation omitted) (stating that each provision of Indiana Code Section 31-19-9-8(a)(2) provides an independent grounds for dispensing with parental consent), *trans. denied.*[6]

_____

[6] T.M. argues for the first time in his reply brief that the trial court could not have found that T.M. failed to knowingly provide care and support for the children. We decline to respond to this new

Because the trial court properly concluded that T.M. failed to significantly communicate with and provide care and support for his two children when able to do so, T.M.'s consent to their adoption was not required.

## II. Motion to Reopen Evidence

T.M. also argues that the trial court erred by denying his motion to reopen evidence. "Evidence must be offered during the course of a trial[,] and it is a matter of discretion whether a trial court will permit a party to present additional evidence or testimony once the party has rested, once both parties have rested, or after the close of all of the evidence[.]" *In re D.Q.*, 745 N.E.2d 904, 908 (Ind. Ct. App. 2001). We will disturb the trial court's decision only if there is a clear abuse of discretion. *Id.*

The evidence at issue is contained in three affidavits from Mother's relatives. These affidavits contain statements and opinions regarding Mother's parenting and her feelings about T.M. *See* Appellant's App. p. 27-36. T.M. argues that the trial court erred in denying his motion because the affiants' relation to Mother makes this evidence particularly important, the evidence was not cumulative of previous testimony, and it could not have been discovered with due diligence.[7]

---

argument as the purpose of a reply brief is to respond to the appellee's arguments, not to raise new issues. *See* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief."). Nevertheless, there is sufficient evidence of T.M.'s awareness of his support obligation to support the trial court's conclusion on this issue.

We also decline to respond to the second issue raised for the first time in T.M.'s reply brief, specifically, that "preservation of fundamental human rights weighs in favor of remanding this case." Appellant's Reply Br. p. 9. Still, this argument simply amounts to a recitation of T.M.'s other appellate arguments.

[7] T.M. also argues that the trial court abused its discretion in denying his motion because Mother did not oppose it. Appellant's Br. p. 15. This argument is not persuasive as the motion to reopen was denied before Mother's response was due and in light of Mother's statement in her appellee's brief that she opposed the motion.

9

We need not decide whether the evidence was cumulative of previous testimony or consider the source of the evidence because it is clear that T.M. could have discovered the evidence by exercising due diligence. T.M. argues that he "was not in regular contact with these ex-relatives and due diligence would not have led him to seek information from the relatives of the Mother in order to support his case." Appellant's Br. p. 15. It may be that T.M. did not communicate often with Mother's relatives, and he may not have believed they would support his cause. However, T.M. does not argue that he did not know the affiants' locations at the time of the hearing, and T.M.'s own affidavit indicates his ability to contact the affiants before the hearing took place, yet he did not do so. *See* Appellant's App. p. 37-38. The trial court did not abuse its discretion by denying T.M.'s motion to reopen evidence.[8]

Affirmed.

CRONE, J., and BRADFORD, J., concur.

---

[8] T.M. makes a brief argument in closing that the trial court also abused its discretion by denying his motion to correct errors. *See* Appellant's Br. p. 16-17. T.M. claims that the trial court erred in this regard for the same reason it erred by denying his motion to reopen evidence. Because we conclude that the trial court did not err by denying T.M.'s motion to reopen, this argument fails.