**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**WILLIAM S. FRANKEL**
Wilkinson Goeller Modisett
   Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEY FOR APPELLEE:

**JENNIFER L. VAN KEPPEL**
Jensen & Associates
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF C.E.H., minor, | ) ) ) | |
| W.S. and E.H., | ) ) | |
| Appellants, | ) ) | |
| vs. | ) ) | No. 29A05-1111-AD-683 |
| J.T.C. and S.L.C., | ) ) | |
| Appellees. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1101-AD-116

**August 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

W.S. ("Mother") and E.H. ("Father") appeal the trial court's grant of an adoption petition filed by J.C. ("Adoptive Father") and S.C. ("Adoptive Mother") (collectively, "Adoptive Parents") regarding C.E.H. We affirm.

## Issues

Mother and Father raise two issues, which we restate as:

I.      whether the trial court properly concluded that Mother and Father's consents to the adoption were unnecessary; and

II.      whether the trial court properly prevented Mother and Father from presenting evidence at the final adoption hearing.

## Facts

In July 2000, Mother pled guilty to possession of a controlled substance and also pled guilty to a later probation violation. In August 2002, Mother pled guilty to possession of methamphetamine. In November 2002, Mother pled guilty to Class D felony failure to appear, and in August 2003, Mother pled guilty to Class D felony escape. In July 2002, Father was sentenced to four years and six months in prison for drug charges. In December 2002, Father was sentenced to three years for aggravated battery.

C.E.H. was born to Mother and Father in March 2005. Father signed the birth certificate and paternity affidavit at the hospital and acknowledges that he is C.E.H.'s biological father. C.E.H. initially lived with Mother and Mother's parents. When C.E.H. was three months old, Mother and C.E.H. moved to Illinois to live with Father. In

2

December 2005, Mother and C.E.H. moved back to her parents' residence. Four days later, Father's residence was "raided," and the police discovered fifteen pounds of marijuana. Tr. p. 99.

Father then moved in with Mother and C.E.H. at Mother's parents' residence. On October 22, 2006, Mother and Father were arrested at her parents' residence. Mother had methamphetamine and marijuana in her possession, and Father was storing marijuana in a neighboring house. Mother pled guilty to possession with intent to deliver marijuana and to maintaining a common nuisance. Father was sentenced to five years and nine months for possession of marijuana.

As a result of Mother's arrest, C.E.H. was removed from Mother's custody and was found to be a Child in Need of Services ("CHINS"). She was initially placed with her maternal grandmother, but she was later removed after maternal grandmother allowed Mother to be with C.E.H. unsupervised. C.E.H. was then placed in foster care. Adoptive Mother is Father's cousin, and Adoptive Parents became C.E.H.'s foster parents in February 2007.

Eventually, a petition to terminate Mother and Father's parental rights was filed. In an effort to avoid the termination, Father asked Adoptive Parents to become C.E.H.'s guardians. Maternal grandmother also sought to be appointed as C.E.H.'s guardian, but the trial court appointed Adoptive Parents as guardians in September 2008.

From March 2007 to February 2009, Mother was incarcerated at the Indiana Women's Prison. In October 2008, the trial court ordered that Mother could have supervised visitation with C.E.H. for three hours a month at the prison. Mother missed

3

some visitations during her incarceration because she received ninety days of segregation for a failed urine test.

After Mother's release from incarceration in February 2009, the trial court awarded her four hours of supervised visitation every other week and appointed a guardian ad litem ("GAL"). The trial court later ordered Mother and Father to each pay child support of $52 per week. In August 2009, the GAL recommended that Mother have weekly parenting time of six to eight hours, including parenting time at Mother's residence, and the trial court issued an order consistent with the GAL's request.

Mother began working full-time and was taking college classes. She was also remodeling the house next to her parents' residence. Parenting time gradually increased to include occasional overnight visitations at Mother's residence. Father also occasionally visited with C.E.H. during Mother's visitation, but in September 2009, Father told the GAL that he was not "in any position to take [C.E.H.] into his home . . . ." Appellant's App. p. 61.

In June 2010, Mother was arrested for operating a vehicle while intoxicated, and she pled guilty on July 13, 2010. The September 2010 GAL's report noted that Mother believed Father should be drug tested. The report also noted that Adoptive Parents had concerns with Mother driving C.E.H. while Mother's driver's license was suspended. Mother's driver's license has been suspended seventeen times. The GAL recommended that Mother receive additional parenting time, including extended parenting time during Christmas, that there be no contact between Father and C.E.H., and that Mother refrain from driving C.E.H. unless her driving privileges were reinstated.

4

In November 2010, Mother was again arrested. She was charged with operating a vehicle while intoxicated endangering a person and operating while intoxicated with a prior OWI within five years. She was incarcerated in December for a probation violation, and Mother's extended parenting time with C.E.H. at Christmas could not occur. The GAL then filed an emergency motion to suspend Mother's parenting time. After Mother was released on January 21, 2011, the trial court granted her supervised visitation of eight hours a month. Father and Mother both concede that they owe child support arrearages but dispute the amounts of the arrearages.

On January 28, 2011, Adoptive Parents filed a petition to adopt C.E.H. They alleged that Mother and Father's consents were not necessary pursuant to Indiana Code Section 31-19-9-8(a)(11) because they were unfit. Mother and Father both filed objections to the adoption. In September 2011, the trial court held a hearing regarding whether Mother and Father's consents to the adoption were necessary. At the time of the hearing, Mother was awaiting trial for her November 2010 OWI charges, she was on house arrest, and she was wearing a bracelet that monitors alcohol consumption. Father had pending Illinois charges for theft and possession of stolen property in one county and burglary, possession of a stolen vehicle, and theft in another county. Father had been informed that the latter charges are "non-probationable and extended-term eligible." Tr. p. 77. Father also had misdemeanor charges pending in Illinois. After the hearing, the trial court entered findings of fact and conclusions thereon on October 31, 2011. The trial court concluded that Mother and Father's consents to the adoption were unnecessary because they were unfit.

5

On December 16, 2011, the trial court held the final adoption hearing. The trial court denied Mother and Father's request to attend the hearing but permitted their counsel to attend the hearing "for the purpose of cross examining witnesses and to preserve his objections as to these proceedings." Appellant's App. p. 7. The trial court found that adoption was in C.E.H.'s best interests and granted Adoptive Parents' petition. Mother and Father now appeal.

**Analysis**

*I. Consent to Adoption*

Mother and Father argue that the trial court erred when it determined that their consents to the adoption were not required. When we review a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. In re Adoption of H.N.P.G., 878 N.E.2d 900, 903 (Ind. Ct. App. 2008), trans. denied, cert. denied. We will not reweigh the evidence but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. Id. The trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We must first determine whether the evidence supports the findings and, second, whether the findings support the judgment. Id. at 904. We will not set aside the findings or the judgment unless they are clearly erroneous. Id. The trial court's findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support

6

them. Id. A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings. Id.

Indiana Code Section 31-19-11-1 provides that the probate court "shall grant the petition for adoption and enter an adoption decree" if the court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given." Consent to adoption is not required from a parent if: "(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent." Ind. Code § 31-19-9-8(a)(11). Here, Adoptive Parents alleged that Mother and Father's consents to the adoption were not required because they were unfit and C.E.H.'s best interest would be served by dispensing with their consent. Mother and Father contested the adoption, and Adoptive Parents had the burden of demonstrating by clear and convincing evidence that Mother and Father were unfit and C.E.H.'s best interests were served "if the court dispense[d] with the parent's consent to adoption." I.C. § 31-19-10-1.2(e).

After the September 2011 hearing, the trial court entered extensive findings of fact and conclusions thereon regarding Mother and Father's consents. Some of the trial court's conclusions follow:

> 13. While [Mother and Father] presented evidence of changed conditions in their lives, such as [Mother] pursuing her education, the positive changes amounted to isolated areas of improvement.

7

* * * * *

20.    Neither [Father] nor [Mother] has attempted reunification with [C.E.H.] under the guardianship matter since January 2011. [Mother] has not asked for an increase in parenting time and [Father] has not asked for a parenting time order.

21.    Neither [Father] nor [Mother] is in any position to attempt reunification with [C.E.H.] as both have felony trials scheduled in the next three months and [Father] has continued to be charged with felonies during the pendency of this matter.

22.    Even if [Mother and Father] are found not guilty of their felony charges, they would need to demonstrate a two-year period of sobriety and neither [Mother nor Father] has achieved a two-year period of sobriety during [C.E.H.'s] life to date.

23.    [C.E.H.] needs permanency and stability now. She is 6-1/2 years old. She was removed from her parents almost five (5) years ago and has not spent more than 48 consecutive hours with them since 2006.

24.    [Mother and Father] are a bad influence on each other and a bad influence on [C.E.H.]. While attempting to reunify with [C.E.H.], [Mother's] risky behavior endangered herself and [C.E.H.]. Both [Father and Mother] have committed multiple crimes since [C.E.H.] was born. [C.E.H.] should not have to wait for [Mother and Father] to gain stability before she is safely placed in a permanent family.

25.    No evidence was presented of [Mother or Father] providing substantial care of [C.E.H.] since November 2010, but rather [Mother] had eight (8)-8 hour supervised visits that involved shopping, games, trips to fun places, and parties.

26.    Since [C.E.H.] was 18 months, [Mother and Father] have seen her for less than 1% of her life.

27. No evidence was presented, nor was it alleged, that the [Adoptive Parents] failed to follow any order of any court, including but not limited to parenting time and/or visitation orders.

28. [Adoptive Parents] have proven by clear and convincing evidence that [Mother and Father] are unfit parents and it would be in [C.E.H.'s] best interests to dispense with their consents under I.C. § 31-19-9-8(a)(11).

29. The conclusion that [Mother and Father] are unfit is not based solely on their criminal histories and potential for future incarceration, but rather the totality of the evidence presented.

30. Evidence presented at the hearing in this matter overwhelmingly established that granting the [Adoptive Parents'] petition for adoption at the appropriate hearing would be in [C.E.H.'s] best interests.

\* \* \* \* \*

Appellant's App. pp. 33-37.

Mother and Father do not dispute any of the trial court's findings of fact or conclusions thereon except for the ultimate conclusion that they are unfit. They concede that they have a history of substance abuse and criminal activity. However, they argue that they desire to care for C.E.H., that their crimes have not been violent, that they have maintained stable housing, that they have maintained "respectable employment," that Mother has made progress improving herself through college classes, parenting classes, substance abuse treatment, and church attendance, that they regularly visited with C.E.H., and that the GAL recognized their parenting time with C.E.H. went well. Appellant's Br. p. 21.

9

The trial court's undisputed findings of fact reveal that Father has ongoing criminal activity. He has prior convictions for drug offenses, aggravated battery, and possession of marijuana and pending charges for theft, possession of stolen property, burglary, possession of a stolen vehicle, theft, and a misdemeanor. Father does not dispute the trial court's finding that he has a substance abuse problem. He has never had a parenting time order regarding C.E.H., but he has visited C.E.H. during Mother's parenting time and has called her a couple of times. When not incarcerated, he works for a roofing company. He owns a home in Illinois, but it has never been inspected by the GAL. Although he disputes the amount, he concedes that he has a child support arrearage. He admitted to the GAL in 2009 that he was in no position to have custody of C.E.H.

As for Mother, she also has ongoing criminal and substance abuse issues. She has convictions for possession of a controlled substance, possession of methamphetamine, failure to appear, escape, possession with intent to deliver marijuana, maintaining a common nuisance, and operating a vehicle while intoxicated. She has also repeatedly violated her probation and has pending charges for operating a vehicle while intoxicated endangering a person and operating a vehicle while intoxicated within five years of a prior conviction for the same. At the time of the consent hearing, she was wearing a bracelet that monitored alcohol consumption and was on house arrest. Mother's driver's license has been suspended seventeen times.

Mother did consistently seek and participate in parenting time with C.E.H., which went well. However, the longest period of time that Mother has cared for C.E.H. since

10

her removal in 2006 is forty-eight hours. Additionally, during a visit in August 2010, Mother drove C.E.H. even though her driver's license was suspended. Also during the summer of 2010, Mother drank alcohol while caring for C.E.H. Although the amount is disputed, Mother concedes that she owes a child support arrearage.

Mother has made some improvements. She has been consistently employed when she is not incarcerated, and she is attending classes at Ivy Tech. She has also purchased a residence next to her parents' residence. However, some questions remain regarding the suitability of that house. Mother testified that she purchased the house from Larry Sabington for $2,000. Public records do not show that Mother or Larry Sabington have title or have ever had title to the property. Although Mother is remodeling the residence, the outside of the house still does not have siding and pink insulation is exposed.

Given the ongoing criminal activity and substance abuse issues, we conclude that there is clear and convincing evidence to support the trial court's determination regarding Mother and Father's unfitness to parent C.E.H. Mother and Father's argument to the contrary is merely a request that we reweigh the evidence, which we cannot do. It is well-settled that "'[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children.'" In re Adoption of H.N.P.G., 878 N.E.2d 900, 907 (Ind. Ct. App. 2008) (quoting Castro v. State Office of Family and Children, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), trans. denied). Even after their most recent criminal charges are resolved, there is no guarantee that they will be able to obtain custody of and care for C.E.H. C.E.H.'s "needs are too important to force her to wait" until a determination can be made that Mother and Father

will be able to be fit parents to her. See H.N.P.G., 878 N.E.2d at 907. As such, there is clear and convincing evidence to support the trial court's determination of Mother and Father's parental unfitness and its determination that dispensing with their consents to the adoption would serve C.E.H.'s best interests.

## II. *Final Adoption Hearing*

Next, Mother and Father argue that the trial court erred when it prevented them from presenting evidence at the final adoption hearing. The trial court denied Mother and Father's request to attend the hearing but permitted their counsel to attend the hearing "for the purpose of cross examining witnesses and to preserve his objections as to these proceedings." Appellant's App. p. 7. Mother and Father's attorney attended the final adoption hearing and argued that they had the right to present evidence and cross-examine witnesses. Their counsel wanted to cross-examine Adoptive Parents regarding their fitness, behavior since the last hearing, and C.E.H.'s reaction to recent events. The trial court did permit Mother and Father's counsel to cross-examine the witnesses.

During the hearing, counsel cross-examined Adoptive Father regarding their failure to allow visitation since the order regarding Mother and Father's consents was issued and C.E.H.'s reaction to the lack of visitation. He did not cross-examine Adoptive Mother. Their trial counsel said that he "would have called witnesses on some of the questions that were, the answers that were impugned about as to whether or not they've had any contact, things like that, but my understanding from the Court is I'm not allowed to call witnesses at this point so I have nothing to present." Tr. p. 186. The trial court inquired as to whether Mother and Father's counsel wished to make an offer of proof, and

12

counsel declined to do so. The trial court then "incorporate[d] the prior hearing into this cause," and found that "it is in the best interest of the child for the adoption and that the Petitioners are proper people for the adoption." Id.

On appeal, Mother and Father argue that, despite the trial court's order regarding their consent, they still had an interest in the proceedings and were entitled to testify and present evidence. However, we need not address the issue because, even if the trial court erred by preventing Mother and Father from presenting evidence, they are not entitled to reversal.

Indiana Evidence Rule 103(a) provides that "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected" and "the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked." Although the trial court gave Mother and Father's counsel the opportunity to make an offer of proof, he declined to do so. On appeal, Mother and Father argue that their counsel's statements during the hearing were sufficient to be considered an offer of proof. During the hearing, counsel implied that he would have presented witnesses regarding the denial of visitation after the consent order was issued. However, counsel had already cross-examined Adoptive Father regarding that issue. There is no indication what additional evidence counsel would have presented through Mother and Father. The failure to make an offer of proof precludes a party from raising the issue on appeal. Baxendale v. Raich, 878 N.E.2d 1252, 1258 (Ind. 2008). We conclude that Mother and Father waived the issue by failing to make an offer of proof. See id. ("There is no showing what the anticipated

13

evidence would have been. Testimony could have ranged from highly relevant drug use to nonabusive and moderate use of alcohol, or even that neither was in use. Failure to make an offer of proof precludes raising this issue on appeal.").

Waiver notwithstanding, we conclude that Mother and Father's substantial rights were not affected by the exclusion of their evidence.[1] See Ind. Evid. R. 103(a). The trial court here "incorporate[d] the prior hearing into this cause." Tr. p. 186. Thus, the evidence presented at the consent hearing was incorporated into the final adoption hearing. There is ample evidence that C.E.H. has thrived in Adoptive Parents' care. Evidence was also presented during the consent hearing regarding C.E.H.'s bond with Mother and Father, their successful visitations with C.E.H., and Mother's improvements in her life. Despite this evidence, after the consent hearing, the trial court concluded: "Evidence presented at the hearing in this matter overwhelmingly established that granting [the Adoptive Parents] petition for adoption at the appropriate hearing would be in [C.E.H.'s] best interests." Appellant's App. p. 37. Given the evidence presented regarding Mother and Father's ongoing criminal activity and substance abuse, we cannot say the trial court's finding regarding C.E.H.'s best interests is clearly erroneous. The trial court's exclusion of Mother and Father's evidence from the final hearing did not affect their substantial rights.

---

[1] Mother and Father made no due process arguments to the trial court or on appeal. In their reply brief, Mother and Father argue that, even if they failed to make an appropriate offer of proof, the exclusion of their evidence resulted in "fundamental error." Appellant's Reply Br. p. 5. Because we are addressing their argument despite the waiver and find no error, we need not address the fundamental error argument.

14

## Conclusion

The trial court's findings and conclusions thereon regarding Mother and Father's consents to the adoption are not clearly erroneous. Further, Mother and Father have not shown that the trial court's exclusion of their evidence from the final adoption hearing affected their substantial rights. We affirm.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.